**In re GRAND JURY PROCEEDINGS.**

Appeal of **CAMPAIGNER
PUBLICATIONS, INC.,**
et al., Appellants.

**In re GRAND JURY PROCEEDINGS.**

Appeal of **CAUCUS DISTRIBUTORS,
INC., Appellant.**

Nos. 85–1762, 86–1047 and 86–1170.

United States Court of Appeals,
First Circuit.

Argued April 8, 1986.
Decided July 3, 1986.

Matthew H. Feinberg with whom Segal, Moran & Feinberg, Boston, Mass., Kenneth J. Aronson, Hochheiser & Aronson, Joseph M. Weitzman, New York City, Daniel S. Alcorn, Fensterwald, Alcorn & Bowman, Arlington, Va., Ronald D. Degen and O'Rourke & Degen, New York City, were on brief, for Campaigner Publications, Inc. and Caucus Distributors, Inc.

Kenneth J. Aronson with whom Hochheiser & Aronson, New York City, Matthew H. Feinberg, Segal, Moran & Feinberg, Boston, Mass., Joseph M. Weitzman, New York City, Daniel S. Alcorn, Fensterwald, Alcorn & Bowman, Arlington, Va., Ronald D. Degen and O'Rourke & Degen, New York City, were on briefs, for Caucus Distributors, Inc.

Daniel I. Small, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., and Martha Sosman, Asst. U.S. Atty., Boston, Mass., were on brief, for the U.S.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

These three consolidated appeals have been taken from judgments of civil contempt against appellants Campaigner Publications, Inc., Fusion Energy Foundation, National Democratic Policy Committee, and Caucus Distributors, Inc., all organizations associated with Lyndon LaRouche. The contempt judgments were imposed by the United States District Court for the District of Massachusetts due to the failure of the appellants to cooperate with a grand jury investigation into possible credit card fraud by these and other LaRouche related entities. These organizations are suspected of obtaining hundreds of thousands of dollars in interest-free loans from credit card banks. The loans were allegedly obtained by fraudulently altering small credit card purchases or donations from persons interested in Lyndon LaRouche to reflect a charge for a large sum. The sums thus

obtained were ultimately returned to the credit card bank *sans* accrued interest after the owner of the credit card informed the bank that the charge was not authorized.

Contempt proceedings began in district court in March of 1985. By late January of 1986, three separate judgments of contempt had been entered, each relating to a different period during which certain of the organizations had refused to cooperate with the grand jury. Appeal No. 85–1762 was filed by all four appellants and pertains to the initial contempt judgment and the first partial judgment, both entered in the spring of 1985. Appeal No. 86–1047 involves the second order of partial judgment entered in November, 1985. Appeal No. 86–1170 concerns the further judgment and commitment entered in January, 1986. Appeals Nos. 86–1047 and 86–1170 were brought by Caucus Distributors only. We shall consider each of these judgments in turn.

*Appeal No. 85–1762*

The events leading to the initial contempt order and first partial judgment began on January 30, 1985, when the United States Marshals attempted to serve keeper of the records grand jury subpoenas at the New York headquarters of six LaRouche related organizations: Campaigner Publications, Inc.; Caucus Distributors, Inc.; Fusion Energy Foundation; National Democratic Policy Committee; The LaRouche Campaign; and Independent Democrats for LaRouche. The Treasurer of The LaRouche Campaign and Independent Democrats for LaRouche told the marshals that no one was authorized to accept service at that time. The next day a news article about the subpoenas appeared in a Campaigner publication, New Solidarity. On February 6, 1985, one day before the return date of the subpoenas, the United State Marshals again attempted to serve the subpoenas. The subpoenas were left with a receptionist who would not allow the marshals into the office area but told them that she was authorized to accept service. At the grand jury hearing the next day, no witnesses appeared. On February 8, 1985, the United States Attorney sent letters by overnight mail to the keepers of the records of the organizations rescheduling the grand jury appearances for February 14, 1985. Again, no witnesses for appellants appeared when the grand jury reconvened.

The government then moved for an order to show cause in the District Court of Massachusetts and served the motion on the four organizations. The district court granted the motion and set a hearing for March 29, 1985. On March 19, 1985, the order was served on a woman at appellants' office who stated that appellants would receive the order from her. Prior to the March 29 hearing, the district court received correspondence from attorneys for some of the subpoenaed organizations requesting a hearing and claiming that service of process for both the subpoenas and the show cause order had not been completed on those organizations. Appellants, however, did not appear at the March 29 show-cause hearing. At that hearing, the district court found that appellants had each been served with the grand jury subpoena and that their failure to comply was without just cause. The court then found each of the four organizations in contempt and ordered each "to pay the sum of $10,-000 per day to the Clerk of the United States District Court for Massachusetts until such time as [each organization] ... shall fully comply with said subpoena." The orders were then stayed until April 2, 1985.

On April 3, appellants, still not in compliance with the subpoena, filed a motion to vacate the contempt order and to quash the subpoenas. A hearing was held that day and the court denied the motion, finding that adequate service had been made. On April 4, 1985, appellants filed a motion to purge contempt and sanctions, which stated that they "hereby accept service to appear before the grand jury." On April 9, 1985, the court ruled that "[i]n light of the acceptance of service by the respondents and their request for a reasonable time to respond to the subpoenas, I will defer ac-

tion on this motion pending notice or a report from either party that a hearing before the Grand Jury has been scheduled." Compliance with the subpoena, however, did not follow and, on April 22, 1985, the district court granted the government's motion for a partial judgment (the first partial judgment) in the sum of $70,-000 against each appellant for failure to comply with the subpoena for the seven days between April 2 and April 8, 1985. Appellants had not paid any of the $10,000 per day fine imposed by the court.

On May 2, 1985, appellants filed a motion for reconsideration regarding the orders of partial judgment which indicated that compliance had commenced on April 18, 1985. On the same day, May 2, the government obtained from the clerk of the district court a certification for registration in another district of the initial contempt judgment issued March 29. The certification stated that no notice of appeal had been timely filed as to the March 29 judgment. This judgment was then registered in the Southern District of New York and a restraining notice obtained freezing a number of appellants' bank accounts. The face of the restraining notice states that on March 29, 1985, a judgment in the amount of $70,000 had been obtained. On May 13, 1985, appellants filed a motion to annul the certification and for sanctions. On May 21, 1985, appellants filed a motion to quash the subpoena duces tecum. That same day a hearing was held on the pending motions. On July 19, 1985, the district court issued an order denying appellants' motion to purge contempt, filed April 4, their motion to reconsider the first partial judgment, filed May 2, their motion to annul certification, filed May 13, and their motion to quash the subpoena, filed May 21. On August 2, 1985, appellants appealed the March 29 initial contempt judgment, the April 22 partial

judgment for $70,000, and the July 19 denials of the motions to reconsider, to annul, and to quash.

In an order dated December 5, 1985, this court dismissed the appeal of the March 29 initial contempt judgment as untimely and the denial of the motion to quash as nonappealable. The appeal of all the other orders and judgments was permitted to proceed.

We now focus on the April 22 partial judgment for $70,000. Appellants' sole argument against the April 22 judgment is based upon its attack on the underlying contempt order issued March 29. Appellants claim that they were never properly served with either the grand jury subpoena or the order to show cause and that since the $70,000 partial judgment rests upon an invalid order, it too is invalid. Appellants also attack this court's decision to dismiss the March 29 judgment as untimely, arguing that because the motion to purge contempt was still technically pending until it was officially denied on July 19, the time for appeal was tolled during this period under Federal Rule of Appellate Procedure 4(a)(4).[1]

Our December 5, 1985 decision to dismiss the appeal of the March 29 order is binding upon us under the doctrine of the law of the case. *See generally* J. Moore, J. Lucas, & T. Currier, 1B Moore's Federal Practice ¶ 0.404 (1984). To elucidate our previous order, however, we point out that while a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) will serve to toll the time for appeal under Federal Rule of Appellate Procedure 4(a)(4), only motions which draw "into question the correctness of the judgment [are] ... functionally a motion under Civil Rule 59(e)." 9 Moore's Federal Practice ¶ 204.12[1] at 4–67. Appellant's motion to purge contempt was not meant to alter

1. Federal Rule of Appellate Procedure 4(a)(4) provides in pertinent part:
   If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an

alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

the judgment, rather it was an attempt to obey the contempt order and stop the accumulation of the fine. As such, it could not toll the time for appeal.

The consequence of our dismissal of the appeal of the March 29 judgment for appellants is that they are precluded from arguing the service of process issues either as to the grand jury subpoenas or the show cause order. Nor can appellants bootstrap these issues into their appeal of the April 22 partial judgment. That judgment was based on appellants being in contempt for the period of April 2 through April 8. Since appellants do not contest the actual contempt finding, their appeal of the April 22 judgment fails.

■ We turn next to the appeal of the denial of appellants' motion to annul the certification. Appellants' basic argument is that the district court's certification of the March 29 contempt judgment was premature. Certification of judgments is governed by 28 U.S.C. § 1963 (1982):

A judgment is any action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment.

A judgment may not be certified for registration, therefore, if the time for appeal has not yet expired. Appellants have argued below and before us that the time for appeal of the March 29 judgment had not expired either because of the pendency of the motion to purge or because a motion for reconsideration of the April 22 partial judgment was filed on May 2, the same day as the certification and within the ten-day appeal period. Neither of these arguments has any merit. As already discussed, the pendency of the motion to purge, if indeed it was really pending, did not serve to toll the time for appeal of the March 29 judgment. Nor could a motion for reconsideration of the April 22 judgment, even if filed within ten days of that judgment, have any effect upon the appeal period for the March 29 judgment.

■ Nonetheless, we must find that the certification was premature. Our finding rests upon the rule, not referred to by any of the parties, that, where the United States is a party in a civil case, the time for filing a notice of appeal by *any party* is extended to sixty days. Fed.R.App.P. 4(a)(1).[2] Since the United States initiated the contempt proceedings and requested the judgments, it is clearly a party to these proceedings. Consequently, the time for appeal of the March 29 judgment had not expired on May 2 when the clerk's office certified the judgment.

■ Although appellants did not specifically point the court to the sixty-day appeal period, they did make the argument that the certification was premature because the period for filing a notice of appeal had not expired. This was sufficient to bring to our attention what, in any event, must be considered "plain error." *See, e.g., MacEdward v. Northern Electric Co., Ltd.,* 595 F.2d 105, 109–10 (2d Cir.1979) ("an appellate court has the power to notice fundamental errors at trial even if the parties do not raise them on appeal"); *Harris v. Smith,* 372 F.2d 806, 815 (8th Cir.1967) ("It is within the discretion of this court to notice plain error in civil appeals"). *Cf. Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir.1976) (court has power to review jury instructions to which no objection was made, but "rule should be applied sparingly"). We, therefore, find that the certifica-

2. Federal Rule of Appellate Procedure 4(a)(1) provides:

In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; *but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry.* If a notice of appeal is mistakenly filed in the court of appeals, the clerk of the court of appeals shall note thereon the date on which it was received and transmit it to the clerk of the district court and it shall be deemed filed in the district court on the date so noted. [Emphasis added.]

tion of the March 29 judgment was improper. We, of course, do not have the power to lift the restraining notice issued by the United States District Court for the Southern District of New York freezing appellants' bank accounts. That court, however, should be informed that the certification received was invalid.

We also note that the restraining notice issued by the Southern District of New York indicates that the March 29 judgment was for $70,000. That judgment, however, was not for $70,000, but for $10,000 per day starting April 2 until there was compliance with the subpoena. It was not until the April 22 judgment that there was any definite determination by the court that compliance had not occurred and a specific dollar judgment was issued. The April 22 $70,000 judgment could not be certified on May 2 under any of the time limits of the rule. It appears that either the clerk's office or the United States Attorney may have mistakenly forwarded the April 22 judgment to the Southern District of New York with the certification of the March 29 judgment, leading that court to believe that the $70,000 judgment was final. This error should be corrected.

*Appeal No. 86–1047*

In this appeal, Caucus Distributors challenges the district court's grant of a second partial judgment on November 22, 1985, while the appeal of the initial contempt order and the first partial judgment were still pending. We begin by setting out the events leading to the second partial judgment. The United States first moved on April 25 for a second partial judgment for noncompliance with the grand jury subpoena during the period of April 9 through April 24. No action was taken by the district court on this motion. In the meantime, appellants filed their notice of appeal as to the contempt judgment and the first partial judgment. Appellants then unsuccessfully sought a stay of the judgments and execution on the judgments from both the district court and this court. Sometime during the fall of 1985, a keeper of the records for Caucus Distributors did appear before the grand jury. The government felt, however, that this still did not constitute compliance because the witness had only been appointed to that position a few days before testifying and could not provide the requested information. The government, therefore, renewed its motion for a second partial judgment in the sum of $150,000 for Caucus' failure to comply with the subpoena between April 9 and April 25. This motion was granted by the district court on November 22. On December 5, this court issued an order dismissing appellants' appeal of the March 29 contempt judgment as untimely.

Appellant's challenge the second partial judgment on two grounds: the same service of process arguments raised against the first partial judgment and the argument that the district court ought not to have issued a second partial judgment while the appeals of the underlying contempt judgment and the first partial judgment were pending. As to the first ground, the service of process issues can no more be raised against the second partial judgment than they could against the first partial judgment. This leaves for consideration appellant's claim that the district court had no authority to issue the second partial judgment because of the pending appeals.

While the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982), an untimely, impermissible or frivolous appeal does not vest jurisdiction in the court of appeals. *United States v. Ferris*, 751 F.2d 436, 440 (1st Cir.1984); *Ruby v. Secretary of the United States Navy*, 365 F.2d 385 (9th Cir.1966); *Benitez v. Bank of Nova Scotia*, 125 F.2d 519, 522 (1st Cir.1942). We have found some authority open to the interpretation that a timely appeal of the March 29 underlying contempt judgment would have divested the district court of jurisdiction to issue further partial judgments stemming from that contempt judg-

ment. *Cf. United States v. Thorp,* 655 F.2d 997 (9th Cir.1981) (district court divested of authority to impose criminal contempt where appeal of civil contempt for similar conduct in same proceedings was still pending); *but cf. Hoffman, Etc. v. Beer Drivers & Salesman's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir.1976) ("in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest a district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken"). In this case there was no timely appeal of the March 29 judgment. Nor can the timely appeal of the April 22 judgment be considered to in any way draw into question the validity of the November 22 judgment. Each was based on a finding that the appellant was in contempt during a particular period of time. Appellant's attempt to bootstrap the service of process issues into its appeal of both partial judgments will not work to divest the district court of its continuing authority to enforce the initial contempt order.

*Appeal No. 86–1170*

In this appeal, Caucus Distributors challenges the further judgment and commitment issued by the district court on January 22, 1986, finding Caucus in contempt of a court order to compel and fining it an additional $5,000 per day until full compliance was reached. The government had moved for the order to compel on November 12, 1985. At issue was the production by Caucus of index cards related to fund raising activities. Grand jury testimony by the keeper of records had revealed that fund raisers working at Caucus offices around the country kept the names of potential and actual donors on index cards, along with various other information including amounts donated. This information was of particular interest to the grand jury in its investigation into the possible involvement of Caucus in the credit card overcharge scheme. The keeper of the records, however, did not turn these index cards over to the grand jury. He claimed that he could not turn the cards over because Caucus was not in possession of the cards. The cards were in the hands of the individual fund raisers, who allegedly considered themselves and were considered by Caucus to be independent consultants rather than employees of Caucus. The fund raisers claimed the cards as their personal property and asserted that both their first and fifth amendment rights would be infringed if they were compelled to turn them over. Caucus fully concurred in and supported the claims of the individual fund raisers.

The government asserted, as the basis for its motion to compel, that the index cards were corporate documents since they were used for corporate fund raising by persons working solely for Caucus and paid a regular salary by Caucus. Caucus responded to the government's motion to compel with a motion for a protective order asserting that the cards were not corporate records and were protected from compelled disclosure by the first and fifth amendment rights of their owners. This motion was accompanied by two detailed affidavits from Caucus fund raisers claiming that they were self-employed political consultants and that the index cards were their personal property. The affidavits stated that some of the cards contained the names of longtime personal political contacts obtained long before any association with Caucus and that most of the information on the cards was personal in nature. The affidavits asserted that having to reveal this information to the grand jury would invade the privacy of these contacts, subject them to harassment by the FBI investigating the credit card scam, violate the first amendment rights of both the fund raisers and the contacts, and destroy the professional credibility of the fund raisers with their contacts. The motion also contained affidavits from persons who had loaned money to the LaRouche campaign and had been intimidated by visits from

FBI agents investigating the credit card scam.

On November 22, the district court granted the government's motion to compel, finding that the index cards were corporate documents covered by the subpoena and that Caucus was required to produce these cards under penalty of further sanctions. Four days later, the United States Attorney wrote Caucus' attorney stating that he would not conduct indiscriminate interviews with everyone named on the cards and that he would be willing to review cards which did not contain any fund raising information and exempt them from production. Caucus then moved in district court for a protective order limiting the government's investigative use of the cards to contributors who voluntarily contacted the government concerning the commission of a criminal act. On December 6, the district court entered a memorandum and order denying Caucus' second motion for a protective order. The district court stated:

> After several hearings and exchanges of documents, I am familiar with the grand jury investigation. I have stated my concern, and I recognize the potential for improper use of the grand jury. Because of the *ex parte* and non-adversarial nature of its proceedings, and given the importance of the First Amendment rights asserted here by the movant, I have reviewed portions of the grand jury transcripts *in camera* and have called for affidavits and representations and I am satisfied that the grand jury proceedings are directed to a legitimate inquiry into alleged criminal activity and the proceedings are being conducted in a proper, even if irregular course, a course for which the continuing contentions of the movant and others aligned with it, are at least partially responsible.

On December 11, the government moved for a third partial judgment on the original contempt order and an additional $5,000 per day fine for Caucus' failure to comply with the order to compel. On December 16, the government moved for an order to show cause why Harley Schlanger, an officer and director of Caucus, should not be held in contempt for failure to comply with the subpoena and the order to compel. The government claimed that Schlanger and Caucus had either sanctioned or encouraged the refusal of the fund raisers to turn over the index cards and had not taken any real steps to force the fund raisers to turn them over, such as disciplining them. A hearing was scheduled for December 30 on this motion. The motion for the third partial judgment was granted on December 19.

In its opposition to the government's motion for further sanctions, Caucus requested that the district court reconsider its November 22 determination that the index cards were corporate documents. Caucus offered to bring up some of the fund raisers to testify on this issue, although in a footnote it indicated that some of the fund raisers had requested a court order prohibiting the government from serving personal subpoenas upon them while they were in Boston. The possibility of such subpoenas, Caucus asserted, would have a chilling effect on its ability to get these fund raisers to testify. Although both Caucus' motion for reconsideration and the show cause order were considered at the December 30 hearing, no testimonial evidence was taken. A second hearing was held on January 17, 1986, to consider the government's motion for further sanctions. The district court denied Caucus' request for an evidentiary hearing and granted the government's motion for an additional $5,000 per day fine for Caucus' continuing failure to either produce the index cards or seriously attempt to get their fund raisers to release them.

Caucus now argues that the district court violated its due process rights by adjudging it in contempt of the order to compel without allowing it an evidentiary hearing at which it could present the testimony of the fund raisers on the question of whether the index cards were personal or corporate documents. Caucus does not present as a question for review the district court's determination that the index cards were corporate documents. It asserts, however, that the evidence it submitted in

the form of affidavits and letters sufficiently cast doubt upon the ownership of the index cards so as to require the district court to hold an evidentiary hearing on the question.

■ There is general agreement that due process requires that a potential contemnor be given notice and a hearing regardless of whether the contempt is civil or criminal in nature, *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508–09, 92 L.Ed. 682 (1948); *In re Sadin*, 509 F.2d 1252, 1255 (2d Cir.1975); *United States v. Alter*, 482 F.2d 1016, 1023 (9th Cir.1973), unless the contempt is committed in open court and tends to "demoralize" the court's authority, in which case punishment can be imposed summarily, *In re Oliver*, 333 U.S. at 274–75, 68 S.Ct. at 508–09; *Ex Parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Whether a contemnor has the right to call witnesses at an evidentiary hearing before being adjudged in civil contempt and subjected to a fine, however, is a question which has rarely been addressed by the courts. In the context of criminal contempt, where the penalty was imprisonment for a set period of time, the Supreme Court has said that the right to a hearing included "the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). *See also In re Green*, 369 U.S. 689, 691–93, 82 S.Ct. 1114, 1116–17, 8 L.Ed.2d 198 (1962) (quoting *Cooke*). In cases involving the imposition of civil contempt in the grand jury context, where the penalty has been confinement of the uncooperative witness until there is compliance with the grand jury subpoena, due process has been considered by many courts to require an "uninhibited adversary hearing" where the witness can "probe all nonfrivolous defenses to the contempt charge." *United States v. Alter*, 482 F.2d 1016, 1024 (9th Cir.1973).

Nonetheless, in the civil contempt context, less than full adversary hearings have been held to comport with due process under certain circumstances. The Second Circuit has held that a full adversary hearing, including the right to call witnesses, is not necessary where the facts surrounding the contempt are undisputed and cannot be further elucidated by evidence. *In re Rosahn*, 671 F.2d 690, 695 (2d Cir.1982) (contempt stemming from refusal to submit to photographing and fingerprinting and to provide hair and handwriting samples does not require full adversary hearing). The Seventh Circuit has also found that an evidentiary hearing is not required in a civil contempt proceeding where documentary evidence clearly established the contempt and no material issues of fact were raised. *Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 782 (7th Cir. 1981). It has also been held that failure to request an evidentiary hearing waives any right to claim a due process violation on appeal. *American Fletcher Mortgage Co., Inc. v. Bass*, 688 F.2d 513, 520 (7th Cir. 1982). A full evidentiary hearing has been refused by this court when it would seriously impair the grand jury process. *In re Lochiatto*, 497 F.2d 803, 807–08 (1st Cir. 1974) (secret and sensitive nature of surveillance information may require district court to review material *in camera* rather than allow defendant access).

A right to call witnesses or to have an evidentiary hearing is most often found where controverted factual issues lie at the heart of the contempt. *Accord United States v. Alter*, 482 F.2d at 1023; *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 578 (D.C.Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967). In a recent case before the Second Circuit involving the credibility of a witness who claimed he could not remember information sought by the grand jury, the court held that

[t]he witness should also have the right to call any other witnesses whose testimony might be relevant to his defense. Of course, the district judge may require that before a third party is permitted to

take the stand, an offer of proof demonstrating the relevancy of the proposed testimony be made and, considering the exigencies of any grand jury proceeding, the district judge would have very broad discretion. In addition, counsel for the allegedly recalcitrant witness should have the opportunity to present the defense's view of the evidence and of any legal issues, either by oral argument or in memoranda. Again, it is within the discretion of the court to control the extent and form of these presentations. *In Re Kitchen,* 706 F.2d 1266, 1273 (2d Cir.1983).

We must now determine whether the district court's denial of an evidentiary hearing denied Caucus due process or whether the particular circumstances of this contempt justified less than a full adversary hearing. It is Caucus' contention that because the factual dispute about the nature of the index cards was the key to its "just cause" defense for noncompliance, the district court should have allowed some of the fund raisers to testify concerning their contention that the index cards were personal property. The government contends that in light of the detailed affidavits offered by two of the fund raisers, as well as the numerous attorney letters asserting the personal ownership of the index cards by various other fund raisers, testimony by such individuals would not have added anything to Caucus' defense. The government also points out that, although Caucus offered to have these individuals come to Boston to testify, it requested that the district court protect them from individual subpoenas and suggested that failure to do so might prevent such testimony. The government suggests that this request for an evidentiary hearing was another of Caucus' "stonewalling" tactics, that the witnesses would almost certainly not have appeared, and that after almost a year of supervising this grand jury investigation the district court could properly avoid this predictable and unnecessary delay.

Although this is a close case, we agree with the government that Caucus' due process rights were not violated by the denial of an opportunity to have the fund raisers testify about the nature of the index cards. The basic position of the fund raisers was set out in the affidavits and letters. The fundamental question which the court had to decide was whether the cards were sufficiently involved in Caucus' business of fund raising so that they could be considered corporate documents regardless of their prior uses or ownership. Some courts which have been faced with a question as to the personal or corporate nature of documents have resolved the question by an *in camera* inspection of the documents themselves. *E.g., United States v. MacKey,* 647 F.2d 898, 899 (9th Cir.1981). This would have been the best way to determine the status of these documents. Caucus did not, however, offer to allow the district court to inspect the index cards. Because of the likely repetitiveness of the fund raisers' testimony, the real probability that they would not appear at all, and the overall delay in the grand jury proceedings already caused by Caucus' and the other organizations' refusal to produce anything until forced to do so, we find the district court's decision to deny an evidentiary hearing did not violate Caucus' due process rights.

*Affirmed in part, reversed in part. Remanded to the district court for further proceedings consistent with this opinion.*