## In re GRAND JURY PROCEEDINGS (John DOE).

### No. 92 Misc. 39.

United States District Court, E.D. New York.

June 4, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Neil Ross, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Frank Doddato, Capetola & Doddato, Williston, N.Y., for defendant.

## CORRECTED MEMORANDUM AND ORDER

KORMAN, District Judge.

John Doe is a witness who was subpoenaed to appear before a grand jury investigating an organized crime family in the New York area. The witness is believed by the United States Attorney to have been a victim of the extortionate activity of the targets of the investigation and to have had "minor, if any" culpability in criminal wrongdoing. The witness refuses to answer questions before the grand jury because he fears that by doing so he will be placing his life in jeopardy. The United States Attorney concedes that this fear is well-founded. Indeed, it is confirmed by information that the Federal Bureau of Investigation communicated to the witness. Nevertheless, while he is "sensitive to the concerns" raised by the witness, the United States Attorney presses his motion for an order summarily confining the witness for a period of up to eighteen months. According to the United States Attorney, the witness can secure his safety by permanently separating himself from his friends and family and beginning a new life in the witness protection program.

Although the United States Attorney asserts that he is entitled as a matter of right to an order that would force the witness to choose—upon pain of summary incarceration for a period of up to eighteen months—either the physical retribution that he has reason to fear or the end of the life that he has known up to this point, a citizen may not be forced to make such a choice based upon the unreviewable discretion of the United States Attorney.

Of particular significance here is the Supreme Court's decision in *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), which held that a "community's vital interests in law enforcement" must be balanced against the threat to the health and safety of the individual from whom evidence is sought. *Id.* at 759, 105 S.Ct. at 1615. Specifically, the Commonwealth of Virginia had obtained a court order directing a suspect in an armed robbery to undergo surgery to remove an object thought to be a bullet lodged under his left collarbone. *Id.* at 756, 105 S.Ct. at 1614. There was, concededly, probable cause to believe that this bullet would confirm that the suspect had been the perpetrator of the robbery and that he had been shot by the victim. *See id.* at 755–56, 105 S.Ct. at 1613–14.

The Supreme Court held that a threat to the health and safety of the suspect had to be weighed against the need of the Commonwealth of Virginia for the evidence. *Id.* at 760, 105 S.Ct. at 1616. In affirming a judgment that enjoined the enforcement of the order requiring the suspect to undergo surgery, the Supreme Court observed:

> The medical risks of the operation, although apparently not extremely severe, are a subject of considerable dispute; the very uncertainty militates against finding the operation to be "reasonable." In addition, the intrusion on respondent's privacy interests entailed by the operation can only be characterized as severe. On the other hand, although the bullet may turn out to be useful to the Commonwealth in prosecuting respondent, the Commonwealth has failed to demonstrate a compelling need for it. We believe that in these circumstances the Commonwealth has failed to demonstrate that it would be "reasonable" under the terms of the Fourth Amendment to

search for evidence of this crime by means of the contemplated surgery.

*Id.* at 766, 105 S.Ct. at 1619.[1]

The analysis employed in *Lee* is consistent with the caveat Wigmore has attached to his often cited restatement of the "fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence." 8 Wigmore, *Evidence* § 2192, at 64 (3d ed. 1940). *See also Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961). In return for the sacrifice a citizen may be required to make by testifying, Wigmore wrote, "society can fairly be expected to concede ... that it will not exact this knowledge when necessity does not demand it, or when the benefit gained by exacting it would in general be less valuable than the disadvantage caused.... The duty [to provide evidence] runs on throughout all, and does not abate; it is merely sometimes not insisted upon." 8 Wigmore, *Evidence* § 2192, at 66 (3d ed. 1940).

What the United States Attorney asks of John Doe here is perhaps a greater sacrifice than what was asked of the suspect in *Lee*. Doe appears to be an innocent victim rather than a suspect. The risk to his life, if he testifies, would be more serious than the medical risk, "apparently not extremely severe," of the surgery ordered in *Lee*. *Lee*, 470 U.S. at 766, 105 S.Ct. at 1619. Moreover, the witness protection program, which the United States Attorney holds out as an alternative, would involve an extraordinary intrusion into John Doe's life and liberty.

The present case is admittedly different from *Lee* in one significant legal respect. Because John Doe has been subpoenaed to appear before a grand jury, he may not invoke the protection of the Fourth Amendment against unreasonable searches and

---

1. In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court employed a similar balancing test to hold that deadly force may not be used to prevent a felon from escaping unless the pursuing law enforcement officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Id.* at 3, 105 S.Ct. at 1697. The Supreme Court explicitly rejected the premise that the apprehension of a fleeing felon may be undertaken regardless of the circumstances, observing that "[i]t is not better that all felony suspects die than that they escape." *Id.* at 11, 105 S.Ct. at 1701.

seizures upon which the holding there turned. *See United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).[2] On the other hand, the issue here is not whether there is a legal basis for a United States district judge to stop an on-going state criminal investigation. While such extraordinary relief may rest only upon a specific provision of the Constitution, at issue here is the discretionary authority that a district judge has been asked to exercise to aid a grand jury investigation. As the Supreme Court has held:

> A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so.

*Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1959).

The discretionary nature of the relief requested here is confirmed by the text of 28 U.S.C. § 1826 upon which the United States Attorney relies in seeking the confinement of John Doe. Section 1826 provides that

> [w]henever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown ... to testify or provide other information, ... the court, upon such refusal, ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information.

28 U.S.C. § 1826 (Supp.1992). This language does not mandate a summary order of confinement when a witness refuses to testify without "just cause." Nor does the legislative history to the section suggest that Congress intended to do anything more than "codify present practice" under which "the court is authorized summarily to confine the witness...." H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4022. The present practice, to which the legislative history made reference, did not compel confinement. On the contrary, a "contempt citation is a matter in [the] discretion of the judge who gives it...." *United States v. Reide*, 494 F.2d 644, 647 (2d Cir.1974). "A district judge has wide latitude in a civil contempt citation in determining whether to order coercive incarceration at all, and if incarceration is deemed warranted, the length of incarceration imposed is within his sound discretion as long as it does not extend beyond the jury term." *In re Cueto*, 443 F.Supp. 857, 863 (S.D.N.Y.1978).

██ As Chief Justice Marshall observed, however, a motion addressed to the discretion of a court is "a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, Fed. Cas. No. 14, 692d (C.C.Va.1807). *See also In re Grand Jury Proceedings Empanelled*, 894 F.2d 881, 887 (7th Cir.1990). Sound legal principles establish that "[e]very citizen ... owes to his society the duty of giving testimony to aid in the enforcement of the law." *Piemonte v. United States*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 1722 n. 2, 6 L.Ed.2d 1028 (1961) (citing 8 Wigmore, *Evidence* § 2192, at 64 (3d ed. 1940)). Moreover, the Court of Appeals for the Second Circuit has transformed into holding the dictum in *Piemonte* that neither a witness's "fear for himself or his family" constitutes "a valid excuse" to refuse to testify. *Piemonte*, 367 U.S. at 559 n. 2, 81 S.Ct. at 1722 n. 2. *See Simkin v. United States*, 715 F.2d 34, 38 (2d Cir. 1983); *In re Grand Jury Proceedings*, 862

---

**2.** Notwithstanding this distinguishing fact, it is hardly clear that the result in *Lee* would have been different if the suspect had been subpoenaed to appear before a grand jury and produce the bullet for use by the grand jury. An order holding the suspect in contempt for failing to produce the bullet, because he refused to undergo the surgical procedure required to comply with the subpoena, would have posed the same problem. *See Hale v. Henkel*, 201 U.S. 43, 76, 26 S.Ct. 370, 379, 50 L.Ed. 652 (1906); *United*

F.2d 430, 432 (2d Cir.1988).[3] *But cf. In re Grand Jury Proceedings Empanelled,* 894 F.2d at 883. On the other hand, sound legal principles also suggest that, if an individual owes a duty to society to testify, "so also he may fairly demand that society, so far as the exaction of it is concerned, shall *make the duty as little onerous as possible.* He may demand that the compulsion be relaxed so far as it is not indispensable for the ascertainment of truth." 8 Wigmore, *Evidence* § 2192, at 67 (3d ed. 1940). *See also In re Grand Jury Proceedings Empanelled,* 894 F.2d at 884.

■ The United States Attorney has made an *in camera* submission which demonstrates that Doe's testimony would not be cumulative and that it could lead to the indictment and conviction of individuals who continue to engage in criminal activity.[4] This showing, however, does not resolve the more critical issue raised by this case which is who should decide on behalf of society that John Doe's life or his way of life should be sacrificed to further this legitimate prosecutive end.

■ While judges may not be suited to make judgments of this kind, it is equally clear that Congress has not chosen to entrust such a decision to the Executive Branch. The United States Attorney is not an investigating magistrate empowered to subpoena witnesses to appear before him and give testimony. When he causes a subpoena to be served on a citizen, it is to compel an appearance before the grand jury. When he seeks an order compelling a witness to testify, he again does so on behalf of the grand jury. *See* Irving R. Kaufman, *The Grand Jury—Its Role and Its Powers,* 17 F.R.D. 331, 336 (1955). Although Congress has vested in the Attorney General, rather than the grand jury, the power to decide whether a witness is to be immunized from prosecution based on testimony he may be compelled to give, *see* 18 U.S.C. §§ 6002–6005 (1985 & Supp.1992), it is the grand jury that possesses the power to decide whether it wishes to hear that testimony. Indeed, the Federal Grand Jury Handbook, which was originally published in 1979, incorporates a model grand jury charge that advises grand jurors that they may "refuse to hear witnesses offered by the United States Attorney." Judicial Conference of the United States, Handbook for Federal Grand Jurors 28 (1979).[5]

This advice is consistent with the role of the grand jury envisioned by the Fifth Amendment guarantee that no citizen may

*States v. Dionisio,* 410 U.S. 1, 11–12, 93 S.Ct. 764, 770, 35 L.Ed.2d 67 (1973).

**3.** While a witness's fear of reprisal does not provide a legal basis for declining to answer a grand jury's questions, it is a circumstance that may be considered in determining whether the contempt sanction will be effective. *Simkin,* 715 F.2d at 38; *In re Grand Jury Proceedings,* 862 F.2d at 432.

**4.** The Court of Appeals for the Second Circuit has held that a summary order of confinement may be entered without a showing that the testimony sought is "significant" and "unavailable from other sources." *In re Grand Jury Proceeding,* 862 F.2d 430, 431 (2d Cir.1988). This holding, however, does not preclude a district court judge from requesting such a showing when asked to exercise his discretion to hold a witness in contempt, particularly where, as here, the showing can be made easily and expeditiously with an *in camera* letter and without compromising grand jury sources. Indeed, the Court of Appeals has required, albeit in a different context, "a showing of exceptional circumstances or compelling need" in cases in which a grand jury subpoena was resisted on grounds that are arguably less compelling than those urged here. *See In re Grand Jury Subpoena Duces Tecum Dated April 19, 1991,* 945 F.2d 1221, 1224 (2d Cir.1991).

**5.** The model grand jury instruction was approved by the Judicial Conference in 1978. *See* C. Clyde Atkins, *Forward* to Judicial Conference of the United States, Handbook for Federal Grand Jurors (1979). A substantially shorter model instruction was approved by the Judicial Conference in 1986. *See* 1 Federal Judicial Center, Bench Book for United States District Court Judges § 3.02–1 (3d ed. 1986). The grand jury is there instructed that "[y]ou alone decide how many witnesses you want to hear." *Id.* at 3.02–9. Subsequently, a revised Handbook for Federal Grand Jurors eliminated the text of the model grand jury instruction contained in the 1979 edition. The Handbook now simply tells the grand jurors that the role of the United States Attorney is to "advise the grand jurors as to what witnesses should be called...." Judicial Conference of the United States, Handbook for Federal Grand Jurors 7.

be brought to trial for an infamous crime "unless on presentment or indictment of a Grand Jury." U.S. Const. amend. V. This guarantee "presupposes an investigative body 'acting independently of either prosecuting attorney or judge'...." *United States v. Dionisio*, 410 U.S. 1, 16, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973) (quoting *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)). While it may be true at times that "the sweeping powers of the grand jury are exercised in reality by the prosecutor alone," because "the grand jury must, almost of necessity, rely upon the prosecutor's leadership," 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 8.2, at 608 (1984), there are occasions when it is appropriate to insist that the grand jury expressly authorize the action that the United States Attorney seeks to undertake on its behalf. This is particularly true in the present context.

The question here is not whether a subpoena should be issued, *see United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 522–23 (E.D.N.Y.1974), or whether the future prosecution of a witness may be hindered by an improvident grant of immunity. Rather, the issue is whether a victim of a crime should, under the threat of confinement for up to eighteen months, be forced to make a decision that may cost him his life or require him to change it radically. If "society" or the "public" has the right to force John Doe to make that choice, then it is altogether appropriate that the grand jury, the disinterested group of citizens that serves "as a kind of buffer or referee between the Government and the people," *United States v. Williams*, —— U.S. ——, ——, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992), make an informed judgment as to whether it is appropriate to put him to that choice.

I am aware of the recent admonition of the Supreme Court that judges should not invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure that would "substantially [alter] the traditional relationships between the prosecutor, the constituting court and the grand jury itself." *Id.* The procedure required here only furthers these "traditional relationships" by ensuring that the prosecutor not arrogate to himself a decision that is for the grand jury to make.

■ Accordingly, before pressing this application to summarily confine John Doe for up to eighteen months, the United States Attorney should advise the grand jury of the reasons for John Doe's refusal to testify, or allow Doe to appear before the grand jury for the purpose of so doing. The grand jury should be advised by the United States Attorney that, even though he may view Doe's testimony as critical to the success of the grand jury investigation, the grand jury must ultimately decide whether it wishes to ask for an order summarily incarcerating Doe for up to eighteen months. If the grand jury votes to ask for a summary contempt citation pursuant to 28 U.S.C. § 1826, the grand jury should appear before me and ask for such relief through its foreperson. If such a request is made then it seems to me that the exercise of my discretion—guided by settled legal principle—will require that the application to cite John Doe for contempt be granted.

### Conclusion

The motion of the United States Attorney is denied without prejudice to a new application if it is authorized in accordance with the conditions set forth above.

SO ORDERED.