UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 93-2316

IN RE: GRAND JURY PROCEEDING

UNITED STATES,

Petitioner, Appellee,

v.

JOHN DOE,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Breyer, Chief Judge,

Cyr and Stahl, Circuit Judges.

Peter B. Krupp on brief for appellant.

Donald K. Stern, United States Attorney, and Fred M. Wyshak,

Jr., Assistant United States Attorney, on brief for appellee.

January 10, 1994

Per Curiam. Respondent John Doe has refused to testify

before a grand jury investigating alleged organized crime

figures, explaining that he was fearful of reprisals against

himself and his family and was opposed on principle to

providing evidence against others. The district court held

respondent in civil contempt and ordered him incarcerated.

It found that his proffered explanations failed to provide

"just cause" for his recalcitrance, see 28 U.S.C. 1826(a),

and that incarceration was reasonably likely to induce a

change of heart. On appeal, respondent now challenges this

determination on procedural grounds: he alleges that the

district court abridged his right to a meaningful evidentiary

hearing by restricting his ability to present live testimony.

We disagree and therefore affirm.

I.

In September 1993, in response to a subpoena from the

grand jury, respondent indicated that he would refuse to

testify. His reasons apparently included a desire not to

incriminate himself, for the government thereafter obtained a

court order granting him immunity and ordering him to

testify. On November 18, respondent was again called before

the grand jury. Despite the court order, and despite a

government offer to place him in the federal witness

protection program, respondent reiterated his refusal to

-2-

testify. The government thereupon filed the instant petition

for contempt.

The district court held three hearings on the matter

during the first week of December. Respondent there sought

to establish that there was no realistic possibility that he

would ever testify, such that his incarceration would be

punitive rather than coercive and thus violative of due

process. Respondent himself took the stand and so stated,

reaffirming that he was fearful of reprisals and that

testifying was not "the right thing to do." This testimony

came in response to queries from the court; respondent's

counsel declined an invitation to conduct further

examination. Beyond this, respondent sought permission to

secure testimony from the following four individuals, for the

reasons indicated:

(1) A witness who had earlier appeared before
the grand jury and had since entered the witness
protection program. It was proffered that this
witness was the source of the government's
information about respondent and so could testify
as to the need for his testimony, as well as to the
dangers posed by the targets of the investigation;

(2) A state trooper, present under subpoena,
who likewise could document such dangers;

(3) Another trooper, also under subpoena, who
could testify that respondent, following his arrest
for a drug offense in 1990, rejected a government
offer of leniency in exchange for his cooperation;
and

(4) Respondent's sister, who could explain
respondent's unwillingness ever to jeopardize the safety
of his family.

-3-

The district court declined to hear such testimony, at

least in the first instance. Instead, it directed respondent

to submit appropriate affidavits (where feasible) or offers

of proof, indicating that it would reconsider the need for

live testimony upon review of such submissions. Respondent

accordingly filed four affidavits from friends and relatives

opining that he would never testify, one from his former

attorney describing the events surrounding his 1990 arrest,

and one from his current attorney attesting to the

dangerousness of the grand jury targets as depicted in

newspaper accounts. The court subsequently concluded that

such procedures were sufficient both to satisfy the dictates

of due process and to provide a suitable basis for decision.

Based on respondent's testimony and the sundry written

submissions, it found a reasonable likelihood that

incarceration would eventually succeed in coercing his

testimony. Respondent was therefore ordered confined for a

period of eighteen months, until the expiration of the grand

jury's term, or until he purged himself of contempt--

whichever occurred first. Respondent now contends that, by

limiting the scope of the evidentiary presentation, the court

deprived him of a meaningful opportunity to explain the

gravity and sincerity of his fears of reprisal, in violation

of due process. We review the decision below for abuse of

-4-

discretion. See, e.g., In re Grand Jury Proceedings (Doe),

943 F.2d 132, 136 (1st Cir. 1991) (per curiam).

II.

Respondent's desire to document the nature and scope of

his fears was not necessarily inappropriate to the

proceedings below. Of course, it has been widely held that a

witness' fear of reprisal against himself or his family does

not constitute just cause for refusing to testify. See,

e.g., Piemonte v. United States, 367 U.S. 556, 559 n.2 (1961)

(dicta); Doe, 943 F.2d at 135 (listing cases); In re Farrell,

611 F.2d 923, 924-25 (1st Cir. 1979).1 Yet a civil

contemnor's incarceration can be transformed from the

permissibly coercive into the improperly punitive where

"there is no realistic possibility that he will comply with

the order to testify." In re Grand Jury, 851 F.2d 499, 502

(1st Cir. 1988) (per curiam); accord, e.g., Simkin v. United

States, 715 F.2d 34, 37 (2d Cir. 1983). And some courts have

indicated that fear of reprisal can be relevant, under

certain circumstances, to the determination of whether any

1. As the Ninth Circuit has explained:

Were it otherwise, any person involved with a
criminal enterprise could point to the possible
danger that comes from giving testimony. The more
vicious or sophisticated the enterprise, the
greater the danger. Thus, grand juries would be
deprived of information when they most needed it.

In re Grand Jury Proceedings (Lahey), 914 F.2d 1372, 1375

(9th Cir. 1990).

-5-

such possibility exists. See, e.g., In re Grand Jury

Proceedings Empanelled May 1988 (Freligh I), 894 F.2d 881,

883-85 (7th Cir. 1989) (duress, demonstrated by reference to

palpable, imminent danger, might constitute equitable defense

to civil contempt); In re Grand Jury Proceedings (Doe), 862

F.2d 430, 432 (2d Cir. 1988) (per curiam) (fear of reprisal

is one factor to be considered in determining whether

"confinement will produce the desired effect"); In re Grand

Jury Proceedings (Gravel), 605 F.2d 750, 752 (5th Cir. 1979)

(per curiam) (fear of reprisal is "legitimate factor in

mitigation").

We need not further explore the applicability of any

such "duress" defense, however, for it is apparent that

respondent was afforded ample opportunity to adduce evidence

with respect thereto. We have noted that, where a civil

contemnor is faced with incarceration, "due process has been

considered by many courts to require an 'uninhibited

adversary hearing' where the witness can 'probe all

nonfrivolous defenses to the contempt charge.'" In re Grand

Jury Proceedings (Campaigner Publications, Inc.), 795 F.2d

226, 234 (1st Cir. 1986), cert. denied, 479 U.S. 1064 (1987)

(quoting United States v. Alter, 482 F.2d 1016, 1024 (9th

Cir. 1973)). Yet this requirement is subject to reasonable

limitations, depending on the circumstances involved. See,

e.g., In re Bianchi, 542 F.2d 98, 101 (1st Cir. 1976) ("While

-6-

a witness must be given a meaningful opportunity to present

his defense ..., this summary procedure does not require

meaningless formalities that would only serve to delay the

proceedings."). Where there is no genuine factual dispute,

or where proposed third-party testimony will likely be

repetitive or of marginal relevance, a court may properly

call for offers of proof or otherwise restrict the ability to

call witnesses. See, e.g., In re Grand Jury Matter

(Backiel), 906 F.2d 78, 85-86 (3d Cir.), cert. denied, 498

U.S. 980 (1990); Campaigner Publications, Inc., 795 F.2d at

235; In re Kitchen, 706 F.2d 1266, 1273 (2d Cir. 1983). The

court's discretion in this regard is "very broad." Id.

Far from constituting an abuse of discretion, the

procedure followed by the district court here was abundantly

fair.2 At the first hearing, the court granted respondent's

request for a continuance to permit further preparation. At

the second, respondent was permitted to testify without

limitation. We note that, to the extent the nature and scope

2. In the related context where contemnors have sought
release from custody on the ground that incarceration had

lost its coercive effect, the Second Circuit has upheld
orders reached on the basis of far more abbreviated
proceedings. See Sanchez v. United States, 725 F.2d 29, 32

(2d Cir. 1984) (based on witness' affidavit and oral
argument); Simkin v. United States, 715 F.2d at 38 & n.2

(based on witness' affidavit only). Indeed, the court went
so far as to say that "a district judge has virtually
unreviewable discretion both as to the procedures he will use
to reach his conclusion, and as to the merits of his
conclusion." Id. at 38 (footnote omitted). See also In re

Crededio, 759 F.2d 589, 591-92 (7th Cir. 1985).

-7-

of his fears of reprisal were not fully elucidated, such

failure is largely attributable to the fact that respondent's

counsel declined the invitation to conduct further

examination. Thereafter, respondent was afforded time to

submit affidavits from, or offers of proof regarding, the

proposed third-party witnesses and others.

Respondent's principal contention--that the court erred

in preventing such witnesses from taking the stand--fails for

several reasons. First, the testimony of relatives

concerning respondent's refusal to jeopardize the safety of

his family would have been cumulative--and was, in any event,

adequately proffered by way of affidavit. Second, the events

surrounding respondent's 1990 arrest were likewise described

in an affidavit. Respondent could have elaborated thereon in

his own testimony but did not. We are left to speculate what

could have been added by the testimony of the arresting

officer.3 Third, any evidence regarding the necessity for

3. To the extent such evidence was intended to buttress his
assertion that he would never testify against others as a
matter of principle, it was of marginal relevance. See,

e.g., Backiel, 906 F.2d at 88 ("moral beliefs" do not alter

duty to testify); In re Crededio, 759 F.2d 589, 593 n.2 (7th

Cir. 1985) (same). Compare In re Parrish, 782 F.2d 325 (2d

Cir. 1986) (affirming decision to release contemnor after
seven months' confinement due to lack of coercive effect;
witness had claimed that to answer grand jury questions would
be betrayal of "black liberation movement").
We also note that respondent's disinclination to turn
against his drug confederates in public fashion in 1990 has
scant bearing on what actions he might take within the
private confines of the grand jury. There has been no
suggestion here that the secrecy of the grand jury has been

-8-

respondent's testimony before the grand jury would have been

irrelevant. There is no requirement that the government show

either "that the information it hopes to obtain from Doe is

significant [or] that that information is unavailable from

other sources." Doe, 862 F.2d at 431; accord, e.g., Backiel,

906 F.2d at 87-88 (grand jury "is free to pursue cumulative

leads"); In re Grand Jury, 851 F.2d at 502 (same).

Finally, prospective testimony as to the danger posed by

the targets of the investigation would have been both

cumulative and of minimal relevance. The court accepted as

an offer of proof counsel's affidavit and various newspaper

articles exploring this issue at length. The government

effectively conceded the matter, and the court expressed a

readiness to assume it to be true. Yet all this proves to

have been largely beside the point in any event, for two

reasons. To have any relevance at all in this context, fear

of reprisal must be based on more than simply vague,

unsubstantiated apprehension. Rather, as the Seventh Circuit

has held, such fear must be "genuine" and "reasonable," as

demonstrated by reference to "palpable imminent danger."

Freligh I, 894 F.2d at 883; see also In re Grand Jury

Proceedings of December 1989 (Freligh II), 903 F.2d 1167,

jeopardized. Compare In re Grand Jury Proceedings (Mallory),

797 F.2d 906 (10th Cir. 1986) (affirming denial of contempt
petition where witness was thought to be in real danger due
to breach of grand jury secrecy).

-9-

1170 (7th Cir. 1990) ("overwhelming sense of immediate

danger"). Respondent's complaints in this regard are of the

former sort. In addition, he has rejected the government's

offer to enroll him in the witness protection program. As we

recently observed: "'The witness may not frustrate the grand

jury's access to the information on the basis that he will be

put in danger by giving it, and, at the same time, reject an

offer to remove or minimize the danger.'" Doe, 943 F.2d at

135 (quoting Gravel, 605 F.2d at 752-53)); accord, e.g., In

re Grand Jury Proceedings (Burns), 652 F.2d 413, 414 (5th

Cir. 1981) (noting that disruption inherent in relocation

must yield to powerful societal interest in ensuring that

grand juries have access to relevant information). Compare

Freligh I, 894 F.2d at 883 (remanding for further proceedings

where witness was given "no opportunity to demonstrate that

he or his family was in danger" and "no offer of

protection").4

III.

4. In In re Grand Jury Proceedings (Doe), 790 F. Supp. 422

(E.D.N.Y. 1992), on which respondent relies, the court noted
that all of the choices faced by the witness--incarceration,
endangering his life, or changing it radically through
relocation--were unpalatable. As a result, prior to issuing
a contempt citation, the court required that the grand jury
be informed of the reasons for the witness' recalcitrance and
that it then make an explicit request that he be
incarcerated. Id. at 427. Respondent can derive no comfort

from this decision. The fact that one court chooses, in the
exercise of discretion, to adopt such safeguards does not
mean that another court's failure to do so constitutes an
abuse of discretion.

-10-

Finally, we find no error in the substance of the

district court's finding that incarceration will have a

realistic possibility of causing respondent to testify. As

respondent has not challenged this finding directly, we note

only the following. The determination to be made by the

district court in this regard "is far removed from

traditional factfinding"--the court "is obliged to look into

the future and gauge, not what will happen, but the prospect

that something will happen." In re Parrish, 782 F.2d 325,

327 (2d Cir. 1986) (emphasis in original). "Even if the

judge concludes that it is the contemnor's present intention

never to testify, that conclusion does not preclude the

possibility that continued confinement will cause the witness

to change his mind." Simkin v. United States, 715 F.2d at

37. Given the "speculative" nature of such inquiry, United

States v. Jones, 880 F.2d 987, 989 (7th Cir. 1989), the

district court enjoys wide latitude in gauging whether

incarceration will be (or will remain) coercive. See, e.g.,

Simkin v. United States, 715 F.2d at 38 ("virtually

unreviewable discretion").

The court here conducted a careful evaluation of the

individual circumstances pertaining to respondent. It

properly discounted the claim that respondent (having

recently completed a three-year term on the drug offense) was

sufficiently familiar with prison life as to render further

-11-

incarceration noncoercive. Unlike earlier, respondent now

carries "the keys of [the] prison in [his] own pocket."

Hicks v. Feiock, 485 U.S. 624, 633 (1988) (internal quotation

omitted). It properly determined that his family ties might

eventually induce a change of heart. And it was justified in

concluding that his present resolve never to testify might

soften over time. See, e.g., Freligh I, 894 F.2d at 883

("faced with protracted incarceration [the contemnor] is

quite likely to reduce his estimate of the gravity of the

threat [of reprisal]").

Affirmed.

-12-