**Morris SIMKIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 1670, Docket 83–6185.**

United States Court of Appeals, Second Circuit.

Argued July 12, 1983.

Decided Aug. 8, 1983.

Leonard M. Weintraub, New York City (Harry W. Davis, New York City, on brief), for appellant.

Thomas H. Roche, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y., on brief), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and MALETZ, Senior Judge.*

NEWMAN, Circuit Judge:

This appeal concerns the recurring and troublesome problem of determining at what point, if ever, during the maximum eighteen-month period in which a recalcitrant grand jury witness may be incarcerated for civil contempt, 28 U.S.C. § 1826 (1976), the witness should be released because the contempt sanction has lost all coercive effect. Morris Simkin appeals from the June 29, 1983, order of the District Court for the Eastern District of New York (Mark A. Costantino, Judge) denying his motion for release from commitment for civil contempt. Because the record reflects considerable ambiguity as to whether the District Court applied the proper standard in denying Simkin's motion, we remand the matter for further consideration.

### I.

Simkin's present predicament is an outgrowth of criminal drug charges brought against him in 1981. On July 8, 1981, he pled guilty to one count of possessing with intent to distribute one-eighth of a kilogram of cocaine. 21 U.S.C. § 841(a)(1) (1976). Prior to sentencing, prosecutors urged him to disclose his sources of supply and his customers, and assured him that his cooperation would be brought to the attention of the sentencing judge and might well avoid the risk of the maximum fifteen-year sentence he faced. Asserting fear for his own safety and that of his mother and uncle, Simkin resolutely refused to furnish any information. On May 4, 1982, he was sentenced by Judge Nickerson to a term of three years, suspended after six months, probation for five years, and a special parole term of three years. He began serving the six-month committed portion of the sentence on July 6, 1982.

A few weeks prior to his scheduled release, Simkin was subpoenaed before a grand jury in the Eastern District of New York. In connection with that appearance he was granted use immunity. 18 U.S.C. § 6002 (1976). Continuing to assert fear of reprisal upon himself and family members if he divulged his drug suppliers and customers, Simkin refused to answer questions before the grand jury. On November 3, 1982, Judge Costantino adjudged Simkin in civil contempt and ordered him confined until he testified, but in no event longer than the eighteen-month term of the grand jury, which had been empanelled on September 22, 1982. Judge Costantino also specified that the civil contempt sanction would interrupt the criminal sentence Simkin was then serving. *See United States v. Dien,* 598 F.2d 743, 744–45 & n. 1 (2d Cir. 1979).

Simkin applied to Judge Costantino for termination of the civil contempt sanction on December 19, 1982, and February 8, May 4, and June 29, 1983. On each occasion his lawyer contended that Simkin was irrevocably committed not to answer the grand jury's questions and that continued incarceration was no longer coercive but instead had become punitive. Counsel contended that Simkin's refusal was based not only on fear for himself and his family, but also on religious grounds. This latter concern was said to arise from "Jewish law and liturgy," not further identified, which was alleged to cast disdain upon an informant. Judge Costantino declined counsel's request to hear from Simkin in person and denied all four requests for release. This appeal is taken from the denial of the June 29 motion.

### II.

■ It is familiar ground that a civil contempt sanction is a coercive device, imposed to secure compliance with a court order, *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), and that "[w]hen it be-

---

* The Honorable Herbert N. Maletz of the United States Court of International Trade, sitting by designation.

comes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take on more of the nature of punishment." *Soobzokov v. CBS, Inc.,* 642 F.2d 28, 31 (2d Cir.1981). When a recalcitrant witness is jailed for refusing to furnish unprivileged information in state court proceedings, it has been held that at some point in what otherwise would be an indefinite period of confinement due process considerations oblige a court to release a contemnor from civil contempt if the contemnor has then shown that there is no substantial likelihood that continued confinement will accomplish its coercive purpose. *See, e.g., Lambert v. Montana,* 545 F.2d 87 (9th Cir.1976); *In re Farr,* 36 Cal. App.3d 577, 111 Cal.Rptr. 649 (1974); *Catena v. Seidl,* 65 N.J. 257, 321 A.2d 225 (1974).

With respect to recalcitrant witnesses before federal grand juries, Congress has determined that eighteen months is the maximum period of confinement for civil contempt. 28 U.S.C. § 1826. We agree with the views of the Third Circuit, expressed by Judge Adams, that in the absence of unusual circumstances, a reviewing court should be reluctant to conclude, as a matter of due process, that a civil contempt sanction has lost its coercive impact at some point prior to the eighteen-month period prescribed as a maximum by Congress. *In re Grand Jury Investigation (Braun),* 600 F.2d 420, 427 (3d Cir.1979).

There remains, nevertheless, a broad discretion in the district courts to determine that a civil contempt sanction has lost its coercive effect upon a particular contemnor at some point short of eighteen months. *In re Grand Jury Investigation (Braun), supra,* 600 F.2d at 428; *In re Dohrn,* 560 F.Supp. 179, 181 (S.D.N.Y.1983); *In re Cueto,* 443 F.Supp. 857, 864 (S.D.N.Y. 1978).[1] The exercise of that discretion con-

fronts a district judge with a perplexing task. The judge need not, of course, accept as conclusive a contemnor's avowed intention never to testify. *United States v. Dien, supra,* 598 F.2d at 745. Even if the judge concludes that it is the contemnor's present intention never to testify, that conclusion does not preclude the possibility that continued confinement will cause the witness to change his mind. *Id.* What is required of the judge is a conscientious effort to determine whether there remains a realistic possibility that continued confinement might cause the contemnor to testify. The burden is properly placed on the contemnor to demonstrate that no such realistic possibility exists. As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue. But if the judge is persuaded, after a conscientious consideration of the circumstances pertinent to the individual contemnor, that the contempt power has ceased to have a coercive effect, the civil contempt remedy should be ended. The contemnor will not have avoided all sanction by his irrevocable opposition to the court's order. Once it is determined that the civil contempt remedy is unavailing, the criminal contempt sanction is available, *see Shillitani v. United States, supra,* 384 U.S. at 371 n. 9, 86 S.Ct. at 1536 n. 9, and can fully vindicate the court's authority, *see, e.g., United States v. Patrick,* 542 F.2d 381, 384, 392–93 (7th Cir. 1976) (four-year criminal contempt sentence imposed upon recalcitrant grand jury witness previously confined for civil contempt), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

In this case, appellant acknowledges that his fear of reprisal does not provide a legal basis for declining to answer the grand jury's questions, *see Piemonte v.*

1. In exercising their discretion, some judges appear to withdraw from their consideration the possible coercive effect of confinement upon the contemnor, assessing only the continuing significance of the withheld evidence and its availability from other sources. *E.g., In re Rosahn,* 551 F.Supp. 505, 508 (S.D.N.Y.), *aff'd,* 697 F.2d 296 (2d Cir.1982) (table). As dis-

cussed in the text, *infra,* we think a district judge must include in his consideration the likelihood of a coercive effect upon the particular contemnor. Judge Goettel's thoughtful consideration in *In re Dohrn, supra,* well illustrates a conscientious assessment of the relevant factors.

United States, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 17–22 n. 2, 6 L.Ed.2d 1028 (1961); United States v. Gomez, 553 F.2d 958, 959 (5th Cir.1977). Instead, he urges that this fear provides a circumstance that should demonstrate to the District Court that the contempt sanction will not be effective. Cf. Harris v. United States, 382 U.S. 162, 166–67, 86 S.Ct. 352, 355–56, 15 L.Ed.2d 240 (1965) (fear may warrant lenient sentence of criminal contempt); United States v. Gomez, supra, 553 F.2d at 959 (same). Having remained in confinement for nearly eight months since the imposition of the civil contempt sanction, Simkin asserts that he should have been released by the District Court on June 29, or that at the least he should have been permitted to testify before the Court to persuade Judge Costantino that further confinement would be futile.

■ A district judge's determination whether a civil contempt sanction has lost any realistic possibility of having a coercive effect is inevitably far more speculative than his resolution of traditional factual issues. Since a prediction is involved and since that prediction concerns such uncertain matters as the likely effect of continued confinement upon a particular individual, we think a district judge has virtually unreviewable discretion both as to the procedure he will use to reach his conclusion,[2] and as to the merits of his conclusion. See Soobzokov v. CBS, Inc., supra, 642 F.2d at 31 ("Ordinarily, it is for the district judge to determine when and if the borderline between coercion and punishment has been reached."); see also In re Grand Jury Investigation (Braun), supra. We have located no decision of a court of appeals requiring a district court to take testimony from a contemnor on the issue of the utility of continued confinement,[3] or rejecting a district court's conclusion that such confinement is warranted.[4]

■ However, we can extend such deference to the decision of a district judge only if it appears that the judge has assessed the likelihood of a coercive effect upon the particular contemnor. There must be an individualized decision, rather than application of a policy that the maximum eighteen-month term must be served by all recalcitrant witnesses. If a judge orders continued confinement without regard to its coercive effect upon the contemnor or as a warning to others who might be tempted to violate their testimonial obligations, he has converted the civil remedy into a criminal penalty.

■ There are ambiguities in the record before us concerning Judge Costantino's purpose in ordering continued confinement. Some of his statements in colloquy with Simkin's counsel suggest a legitimate view that continued confinement might yet prove effective in this case. For example, at the May 4 hearing, the Judge noted counsel's opportunity to make a subsequent application, which suggests his willingness to be persuaded that the coercive sanction has become ineffective sometime during the eighteen months. In this vein, he told counsel on June 29, "You say give it a second look. I am always doing that."

Other statements could refer either to Simkin's circumstances or the general use of the civil contempt sanction. On February 8, Judge Costantino told counsel that confinement "might become persuasive at some point." On June 29, he likened the sanction to "a tourniquet, the tighter you make the tourniquet, the more unhappy the individual might be."

---

2. Judge Costantino had an adequate basis to make a determination concerning the coercive effect of continued confinement upon Simkin; he had an affidavit from Simkin, and he had observed Simkin at the time the civil contempt remedy was ordered.

3. If the contemnor had a right to testify, it is difficult to see why he could not secure repeated opportunities to testify in order to persuade the district judge that further confinement would have no coercive effect.

4. In Soobzokov v. CBS, Inc., supra, we rejected the imposition of a coercive fine only because the District Judge had released the contemnor from confinement after concluding that continued confinement would not achieve its intended purpose.

Still other statements strongly suggest that an individualized decision was not made. The June 29 hearing included the following statement:

I ... can't in good conscience just say, well, since he is not going to talk I have to let him out. Suppose everyone came before me and said the same thing. It is not his case that I am worried about. He is only one case. It is another hundred cases I may get on civil contempt, all of whom can [by their testimony] root out some type of evil.

When counsel inquired at what point the "tourniquet" might lose its effectiveness, the Judge replied, "I assume Congress answered that one when they said that you can be held for the life of the Grand Jury." Later, when counsel urged the Judge to hear testimony by Simkin, which might be persuasive of his determination never to answer questions, the Judge responded:

No, I would never be persuaded by that because that is not what civil contempt is all about .... Civil contempt says that if he is never going to talk then he has to suffer the consequences ....

That last comment nicely illustrates our concern. If the contemnor is "never" going to talk, then suffering the consequences is punishment. If he may yet decide to talk, then the consequences of not doing so continue to be a coercive sanction and a proper application of the civil contempt power.

We do not minimize the difficulty a district judge faces in determining whether in a particular case continued confinement of a recalcitrant witness retains any realistic possibility of achieving its intended purpose. Nevertheless, an individualized decision must be made in each case, and we are left in considerable doubt as to whether such a decision was made in this case. We therefore remand the matter to the District Court for determination whether under all the circumstances the contemnor has shown that there is no realistic possibility that *his* continued confinement will have a coercive effect upon *him*.

Remanded.