**In the Matter of Milton PARISH,**
**Civil Contemnor.**

**No. M 11–188**

United States District Court,
S.D. New York.

July 24, 1985.
Addendum July 25, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Lorna Schofield, Asst. U.S. Atty., New York City, for the Government.

Noah A. Kinigstein, New York City, for Milton Parish.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

The question before me is whether Milton Parish has borne the burden of persuading me that there is no "realistic possibility that continued confinement might cause [him] to testify." *Simkin v. United States* (2d Cir.1983) 715 F.2d 34, 37. Resolution of that question is a truly "perplexing task." *Ibid.* I conclude that he has so

persuaded me. What stands out in his testimony is that it is more important to him to nurture his newly formed friendships with those affiliated with the objectives of the Sunrise Collective than to maintain what would appear to be valuable relationships with persons such as William Cox, who gave heart-warming testimony in his behalf. Further incarceration—far from interfering with—will simply further that objective.

I wish to make clear, however, what I do not find. Parish is under no disability, physical, mental or emotional, which would prevent him from obeying the subpoena should he choose to do so. He truly holds in his pocket the key to the jailhouse door. There exist no equitable considerations such, for example, as those noted by Judge Carter in *In re Cueto* (S.D.N.Y.1978) 443 F.Supp. 857, which would mitigate against requiring Parish to suffer the statutorily permitted consequences of his decision to defy the law. However, as I read *Simkin*, these matters are irrelevant and I am charged with determining whether there is a reasonable possibility that further confinement will induce him to temper his defiance. Being unable to find such a reasonable possibility,[1] I must—and do—order that Parish be discharged from custody.

SO ORDERED.

### ADDENDUM

I wish to make explicit, what I believe to have been clearly implicit in my Opinion, that I was not in any way exercising my discretion. On the contrary, I agree with Judge Brieant (*In the Matter of Dorie Clay* (S.D.N.Y. June 27, 1985) M-11-188) that the result I reached was unwarranted, and would not have reached it except under compulsion. When the *Simkin* court refers to a "broad discretion," 715 F.2d at 37, it seems to me merely to be saying that the District Judge has the "perplexing task" of making a factual determination as to the

probability of the contemnor's ultimate compliance. Once that determination has been made in the contemnor's favor, as I read the opinion, the Judge is left with no discretion.

I also agree with Judge Brieant that the *Simkin* case will ultimately render the statute unworkable and thus nugatory. If utter contempt for the law is a defense against incarceration, I see no principled way of denying a contemnor a "Simkin hearing" on the day of his first appearance before the grand jury. If contempt for the law is a defense, I see no reason for making a contemnor spend six months—or six days—in jail before asserting that defense. Although a court might well decide to let a contemnor spend a few days (or months) in jail to test his resolve, I do not see how— granting the *Simkin* rule—it could properly do so without having heard all witnesses that might legitimately tend to persuade it that no such testing was necessary.

SO ORDERED.

---

1. The United States Attorney has submitted a memorandum cogently suggesting a contrary conclusion. It would indeed be easy to write an opinion demonstrating that Parish might well change his views. The trouble with such an opinion, however, is that it would not persuade me.