**UNITED STATES of America, Plaintiff,**

**v.**

**Anthony SALERNO, et al., Defendants,**

**Joseph Bonanno, Sr., Contemnor.**

**No. SSS 85 Cr. 139 (RO).**

United States District Court, S.D. New York.

April 7, 1986.

Rudolph W. Giulani, U.S. Atty., S.D.N.Y., New York City, for plaintiff; Michael Chertoff, John Savarese, of counsel.

Ira D. London, Brooklyn Heights, N.Y., Donau & Bolt, Tucson, Ariz., for contemnor Joseph Bonanno, Sr.; Alfred S. Donau, III, Tucson, Ariz., of counsel.

OWEN, District Judge.

Joseph Bonanno seeks release from the confinement imposed on him by order of this Court on September 5, 1985 finding him in civil contempt [1] for refusing to testify at a deposition.

The background of this confinement is as follows. On February 26, 1985, an indictment was handed down charging 9 defendants with RICO violations and extortion, in violation of Title 18, United States Code, Sections 1962, 2 and 1951 and Title 29, United States Code, Section 186. Superseding indictments named new defendants and added racketeering acts and substantive counts. The specific charges are that the defendants conducted the affairs of an enterprise known as the "Commis-

sion" of La Cosa Nostra—allegedly formed in 1931—through a pattern of racketeering acts including murder and extortion.

On April 22, 1985, the Government moved this Court for the issuance of a subpoena to Joseph Bonanno, Sr., requiring him to testify at a pretrial deposition pursuant to Fed.R.Crim.P. 15. After finding (1) that because of age and health, the witness might be unavailable for trial, and (2) that his testimony appeared to have relevance and materiality, I granted the Government's motion, and ordered the deposition.

On April 29, 1985, Bonanno moved to quash the subpoena on fifth amendment grounds. Upon a showing that the Government had obtained an immunity order to become effective at the deposition, I denied the motion.

On May 30, 1985, Bonanno moved to quash the subpoena a second time on the grounds that the testimony sought was not material, and that he faced a medical risk if required to testify.[2] I rejected the first claim. Further, after a hearing at which two doctors testified and voluminous medical records were introduced, I concluded that the deposition did not pose a medical risk to Bonanno, and directed that the deposition proceed on July 8, 1985 in Tucson, Arizona, in a "hospital-like setting" as Bonanno had requested. However, the addition of a new defendant, Carmine Persico, Jr., to the indictment required the deposition to be rescheduled to September 4, 1985.

On August 23, 1985, Bonanno filed a new motion to quash the subpoena on medical grounds and on the ground of possible incrimination under foreign law. Oral argument was held on August 29, at which time this Court ruled that (1) a further medical hearing would be held on September 4 in Tucson, Arizona, and (2) any possible claims of privilege with regard to foreign

---

**1.** Pursuant to Title 28, United States Code, Section 1826(a).

**2.** Bonanno requested that if the deposition were held, it be in a "hospital-like setting" in Tucson. The Government did not object to this request.

prosecutions would be resolved on a question-by-question basis.

On September 4, 1985, an all-day medical hearing was held in Tucson to determine whether Bonanno could testify without jeopardy to his life or health. Upon completion of the hearing, I found that there was no showing of an "incapacity by reason of a physical condition to avoid the duty of giving testimony." I ordered Bonanno to appear the next day, September 5, at St. Mary's Hospital in Tucson, to be deposed. He did appear but refused to testify on the "instruction of my doctor," and I remanded him to the custody of the Attorney General, pursuant to 28 U.S.C. § 1826(a), until such time as he was prepared to comply with the Court's order or the trial was concluded. The next day, after appropriate medical consultations, the United States Marshals transported Bonanno from the Metropolitan Correctional Center in Tucson to the Federal Correctional Institution at Springfield, Missouri, where medical facilities for the care of prisoners are available. Bonanno has remained in custody at that facility since then. On appeal, this Court's order holding Bonanno in civil contempt was affirmed on October 4, 1985.

Bonanno now moves—some six months after the commencement of his confinement—for an order of release. He contends that there is no longer a realistic possibility that further incarceration would cause him to give the testimony sought and thus further coercion would be punitive, not coercive. He cites such cases as *In the Matter of Milton Parrish*, 782 F.2d 325 (2d Cir.1986). It was conceded by Bonanno's counsel on the argument before me that Bonanno's health is not in issue, but merely the question of whether further confinement has any possibility to coerce the sought testimony.

As the Court of Appeals for the Second Circuit has repeatedly emphasized, a con-

temnor seeking to vacate a civil contempt order must carry the heavy burden of proving that there remains "no realistic possibility that continued confinement *might* cause the contemnor to testify." *Parrish*, 782 F.2d at 327–28, *quoting Simkin v. United States*, 715 F.2d 34, 37 (2d Cir.1983) (emphasis added).

> As long as the judge is satisfied that the coercive sanction *might yet* produce its intended result, the confinement may continue.

*Simkin*, 715 F.2d at 37 (emphasis added). The Court need not accept a contemnor's assertions of unwaivering recalcitrance "at face value." *Parrish*, 782 F.2d at 327. Indeed, even if the contemnor actually believes he is unbending, the Court may nevertheless conclude that the passage of further time may yet change the contemnor's mind. The discretion in deciding whether further incarceration may have coercive effect is unusually broad. *Simkin*, 715 F.2d at 38.[3]

In any event, as to whether Bonanno's assertion of unwillingness to testify should be taken at face value, I note that his conduct in the past puts this assertion in substantial question. Parts of his autobiography[4] have apparent relevance to the claimed Commission, and he was interviewed on national television in order to promote the book. Bonanno also testified under oath ancillary to a grand jury proceeding. Therefore, Bonanno's decision not to testify at a deposition for use at the forthcoming trial appears to be not a matter of absolute principle, but a reflection of Bonanno's view that it is not yet in his personal interest to testify.

Continued confinement—or its prospect—in my judgment may well persuade Bonanno to reexamine whether refusal to testify still serves his interests. The validity of the Government's continuing claim of need for Bonanno's testimony is not ques-

---

**3.** In this connection, I note that the Court may rely upon its prior observations of the contemnor and need not hold a new factual hearing. *Simkin*, 715 F.2d at 38 & n. 3.

**4.** Published by Simon & Schuster.

tioned. Accordingly, Bonanno's motion to terminate his civil confinement is denied.

So ordered.