In re **GRAND JURY SUBPOENA 87–2 (MIA) SERVED UPON Barry CONSTANT.**

**Grand Jury No. 87–2 (MIA).**

United States District Court, S.D. Florida.

Aug. 11, 1988.

Lynne Lamprecht, Asst. U.S. Atty., Miami, Fla., for the government.

Randy Merrill, Miami, Fla., for Barry Constant.

## MEMORANDUM OPINION AND ORDER OF DISCHARGE

SCOTT, District Judge.

Barry Constant is a recalcitrant witness who has refused to provide testimony in a grand jury proceeding in the Southern District of Florida. Notwithstanding the Court's Order compelling Constant to testify, pursuant to a grant of use immunity under 18 U.S.C. § 6001, *et seq.*, he has continued his refusal. Constant's actions are predicated upon his fear of retribution against his family by the targets of the investigation. The Witness Protection Program was offered to Constant. He turned down the Program because he would not be able to have any further contact with family members, i.e., mother, father and siblings. It is obvious that Constant has close ties to his family.[1]

After conducting an evidentiary hearing during which Constant gave evidence in mitigation, the Court adjudicated Constant in civil contempt and ordered him incarcerated at M.C.C., Miami, for the duration of the Grand Jury's term or 18 months or until he purged the contempt, whichever is less. The Grand Jury term is scheduled to expire on October 16, 1988. It may be extended.

Following two months of incarceration, Constant moved to vacate the Order of Contempt arguing that further incarceration would serve no purpose. The motion drew immediate opposition from the Government which urges continued incarceration until at least the expiration of the Grand Jury.

While our research does not reveal any precedent from this Circuit, the parties generally agree on the legal standard to be applied in determining whether continued incarceration is warranted. Both parties refer to precedent from the Second Circuit: *Sanchez v. United States*, 725 F.2d 29 (2d Cir.1984) and *Simkin v. United States*, 715 F.2d 34 (2d Cir.1983).[2] These cases teach that the District Judge must make a conscientious effort to determine whether there remains a realistic possibility that continued confinement might cause the contemnor to testify. In order to accomplish this goal, we ordered another evidentiary hearing.

At that time, Barry Constant testified for a second time. Constant is a very

---

1. The witness also requested to serve his incarceration near Seattle where his family is located. This request was refused by the Court after consultation with the Marshal's Service.

2. *See Matter of Crededio*, 759 F.2d 589 (7th Cir. 1985); *In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 427 (3rd Cir.1979).

young, sincere and believable witness. He is not sophisticated in the criminal justice system. Our recollection is that he is a mechanic who has worked on boats. We do not perceive him as a person who is attempting to manipulate the system or avoid testifying solely to protect wrong-doers. Indeed, we believe that his sole motivation in refusing to testify is an earnest desire to protect his family, which he subjectively believes would be endangered if he provided information.

While Constant is unable to specify any actual threat to his family, we do not believe this fact forecloses our inquiry. In our experience, intimidation can be created by implied means as well as by actual threats. Moreover, Constant may be reluctant to disclose specific threats for fear that their very disclosure will aggravate his plight and provide the Government with the very information it seeks. *See Sanchez v. United States, supra,* p. 32.[3] In any case, the issue here is the contemnor's belief and his fear. *Cf. Harris v. United States,* 382 U.S. 162, 166–167, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965); *Simkin v. United States, supra,* p. 37.

We are persuaded that his fear is genuine. We further find that due to this fear, Constant will never testify, regardless of the length of incarceration. Under the unique facts of this case, including the demeanor of Barry Constant, we accept the "contemnor's avowed intention never to testify" and that there are no circumstances which would change his mind.[4] *Sanchez*

*v. United States, supra,* p. 31; *Simkin v. United States, supra,* p. 37.

The Court has gone beyond Constant's testimony and considered other factors including the length of time served by the contemnor and the reason for his failure to testify. *See Matter of Dohrn,* 560 F.Supp. 179 (S.D.N.Y.1983) (cited with approval in *Simkin, supra,* p. 37). For example, we considered the fact that Constant had been incarcerated approximately two months at the time he filed his Motion to Vacate. We purposely delayed rendering our decision for another month to see if further delay would affect a change. It has not.[5] Indeed, it has only reinforced our previous conclusion that Constant will never testify.

We recognize that "... the district judge is called upon to make a difficult decision, necessarily involving some prediction concerning the possibilities of the contemnor's future behavior." *Sanchez v. United States, supra,* p. 31.[6] We do not undertake this decision lightly. We fully recognize the importance of the Grand Jury, its investigative need to obtain evidence, and the power of civil contempt to obtain that evidence from sealed lips. 28 U.S.C. § 1826; *In re Grand Jury Investigation (Braun),* 600 F.2d 420, 427 (3rd Cir.1979).[7] Here, however, we are persuaded, after a conscientious consideration of the pertinent circumstances, that the contempt power has ceased to have a coercive effect. In short, "... the borderline between coercion and punishment has been reached." *Soobzokov v. CBS, Inc.,* 642 F.2d 28, 31 (2nd Cir. 1981).[8]

**3.** "A civil contemnor need not risk the use of physical force upon his person [or for that matter his family] ... in order to demonstrate that continued confinement will not alter his determination not to testify." *Id.* at p. 32.

**4.** It is an individual judicial decision to accept or reject the contemnor's avowed intention never to testify. *United States v. Dien,* 598 F.2d 743, 745 (2nd Cir.1979).

**5.** The hearing on the Motion to Vacate Contempt Order occurred on July 19, 1988.

**6.** "A district judge's determination whether a civil contempt sanction has lost any realistic possibility of having a coercive effect is inevitably far more speculative than his resolution of traditional factual issues. Since a prediction is

involved and since that prediction concerns such uncertain matters as the likely effect of continued confinement upon a particular individual, we think a district judge has virtually unreviewable discretion both as to the procedure he will use to reach his conclusion, and as to the merits of his conclusion." *Simkin v. United States, supra* at p. 38.

**7.** This is the first case which we can recall where this Court ever seriously considers vacating contempt prior to expiration of the Grand Jury term.

**8.** While the civil contempt sanction has been vacated, the criminal contempt sanction is still available to the Government. *See United States v. Patrick,* 542 F.2d 381, 384, 393–393 (7th Cir.

Accordingly, it is ORDERED as follows:

1. The Court's Order holding Barry Constant in civil contempt is VACATED. He shall be discharged from custody of the United States Marshal.

2. In order to protect any appellate rights of the Government, this mandate will be STAYED for a period of seven (7) days from entry of this Order to permit the Government to seek a stay in the Eleventh Circuit Court of Appeals. Absent a stay by that Court, Constant will be discharged in seven (7) days from the date of this Order. If the Government does not elect to appeal, it should advise the Court within forty-eight (48) hours so that the Order of Discharge may be executed.

1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).