COMMODITY FUTURES TRADING COMMISSION and Securities and Exchange Commission, Plaintiffs–Appellees,

Alan M. Cohen, Receiver–Appellee,

v.

Martin A. ARMSTRONG, Defendant–Appellant.

Nos. 01–6159L, 01–6160CON.

United States Court of Appeals, Second Circuit.

Argued: Sept. 4, 2001.

Decided: Oct. 12, 2001.

Bernard V. Kleinman, White Plains, NY, for Defendant–Appellant.

Nancy R. Page, Asst. General Counsel, Commodity Futures Trading Commission, Wash., D.C., and Katharine B. Gresham, Asst. General Counsel, Securities and Exchange Commission, Wash., DC, (Kirk T. Manhardt, Deputy General Counsel, Commodity Futures Trading Commission, Jacob H. Stillman, Solicitor, Dorothy Heyl, Senior Trial Counsel, Securities and Exchange Commission, Wash., DC; and Martin Glenn, O'Melveny & Myers LLP, New York, NY, on the brief), for Plaintiffs–Appellees and Receiver–Appellee.

Before NEWMAN, CALABRESI, and SACK, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This motion to dismiss an appeal from an adjudication of civil contempt requires at least preliminary consideration of whether in some limited circumstances a party may obtain appellate review of a civil contempt sanction prior to entry of a final judgment in the underlying action. The Commodity Futures Trading Commission ("CFTC"), the Securities and Exchange Commission ("SEC"), and Temporary Receiver Alan M. Cohen move to dismiss the appeal of Martin A. Armstrong from the July 6, 2001, ruling of the District Court for the Southern District of New York (Richard Owen, District Judge), extending Armstrong's commitment for civil contempt, which was originally ordered on January 14, 2000. We deny the motion to dismiss without prejudice to renewal before the panel considering the merits, and expedite the appeal.

### Background

In September 1999, the CFTC and the SEC filed the underlying action against Armstrong and his companies, Princeton

Economics International Ltd. and Princeton Global Management Ltd., alleging the fraudulent sale of millions of dollars of promissory notes. At that time, an indictment was filed charging Armstrong with several counts of fraud.[1] In connection with the civil suit, the District Court appointed Cohen as a Temporary Receiver and issued turnover orders directing Armstrong to produce "a variety of the corporate defendants' assets, including a host of rare coins, a computer, computer hard disk, and a bust of Julius Caesar." *SEC v. Princeton Economics International Ltd,* No. 00-6076, 7 Fed.Appx. 65, 2001 WL 300550 (2d Cir. March 27, 2001) (summary order) 2 ("*PEIL I*"). Some of the assets sought were subsequently identified as gold bars. Armstrong turned over some, but not all, of the items.

On January 14, 2000, the District Court held a hearing on the Receiver's motion to hold Armstrong in contempt. Armstrong testified that he was unable to comply because the undelivered assets were no longer under his control. The District Court found Armstrong's claim of inability to comply insufficiently supported, found him in contempt, and ordered him confined until he turned over the remaining assets or demonstrated inability to do so, but in no event longer than 18 months.

Upon Armstrong's appeal, we remanded for clarification of the items to be produced, and after the District Court supplied the necessary clarification on August 25, 2000, the appeal returned to this Court.

On March 27, 2001, we dismissed that appeal, *PEIL I,* invoking the rule that a civil contempt adjudication against a party is not appealable until entry of a final judgment in the underlying action, *see Pro–Choice Network v. Walker,* 994 F.2d 989, 993–94 (2d Cir.1993), and concluding that the contempt adjudication of Armstrong was civil because of its coercive nature.

On July 6, 2001, with the original 18–month limit on confinement due to expire on July 14, the District Court held a hearing at which the Plaintiffs reported lack of compliance by Armstrong and sought continued confinement. They estimated that the value of the items he had failed to turn over was $14 million. Unpersuaded that Armstrong had demonstrated impossibility of compliance or that the contempt sanction had lost its coercive effect, Judge Owen denied Armstrong's motion for release and continued his confinement. On July 17, Judge Owen elaborated his reasons in a written Opinion and Order, continuing the confinement "indefinitely," although acknowledging that "civil confinement cannot last forever." He noted that he would evaluate "from time to time" whether release was warranted. Armstrong filed a notice of appeal from the oral ruling of July 6.[2] This is the appeal for which the pending motion seeks dismissal.

### Discussion

The Appellees seek to dismiss the appeal for lack of jurisdiction on the ground

---

1. In the criminal case, Armstrong was released on a $500,000 bond, prior to his confinement for contempt.

2. The Appellees suggest that Judge Owen's July 6 oral ruling of continued confinement has "merged" with his July 17 Opinion and Order, and that the legal significance of the July 6 ruling, isolated from the July 17 Opinion and Order, was to continue confinement

only until July 17. We disagree. We regard the July 17 Opinion as an elaboration of the reasons for the July 6 ruling of continued confinement. Judge Owen said the July 17 Opinion "serves to supplement my prior oral findings and order of July 6." Accordingly, the notice of appeal from the July 6 suffices to seek review of the order for continued confinement, the effect of which still continues.

that a party to underlying litigation cannot appeal a civil contempt until entry of a final judgment. They contend that the current circumstances are no different than those existing in March when this Court dismissed Armstrong's prior appeal. Armstrong resists dismissal on two grounds. First, he contends that the additional passage of time has shown that the confinement has lost its coercive effect, transforming the proceeding into one for criminal contempt. Second, he contends that compliance is impossible for lack of control of the requested items. Both contentions, in effect, urge the availability of appellate jurisdiction under the collateral order doctrine.

### 1. Passage of Time

█ All parties agree that at some point a confinement for civil contempt loses its coercive effect and become punitive, and that a party may appeal a criminal contempt. *Simkin v. United States,* 715 F.2d 34, 37 (2d Cir.1983); *see also Shillitani v. United States,* 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (criminal contempt may be used only where coercing testimony by civil contempt is "inappropriate"). We considered the transition of a contempt from civil to criminal in *Simkin,* where confinement had been ordered for a recalcitrant grand jury witness pursuant to 28 U.S.C. § 1826. We emphasized the obligation of a trial judge to make "a conscientious effort to determine whether there remains a realistic possibility that continued confinement might cause the contemnor" to comply as ordered. *Simkin,* 715 F.2d at 37. In the context of a determination to be made within the maximum 18–month period permitted for confinement of a recalcitrant grand jury witness, we noted that the discretion of a trial judge in making a finding as to such realistic possibility was "virtually unreviewable." *Id.* at 38. Nevertheless, we reviewed the order of confinement for the limited purpose of requiring the District Court to make the individualized determination of a realistic possibility of a continuing coercive effect.

█ The pending appeal differs from *Simkin* in that confinement of Armstrong has now extended beyond 18 months. That does not automatically mean that confinement has lost all realistic possibility of having a coercive effect, but it might well affect the degree of deference to be accorded a trial judge's determination. Indeed, once it is recognized that at some point a non-appealable civil contempt can become an appealable criminal contempt because the initially coercive sanction has become punitive, it would seem inevitable that an appellate court must exercise jurisdiction at least for the limited purpose of deciding whether the determination of a continuing coercive effect was properly made. Otherwise, a sanction that had become punitive, thus meriting appellate review, would permanently escape such review.

### 2. Claimed Inability to Comply

Armstrong claimed at the July 6 hearing that he lacked the ability to produce the items that he had been ordered to produce. The District Court rejected the claim, ruling that this contention was inadequately supported. *See Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995) ("burden of proving *plainly and unmistakably* that compliance is *impossible* rests with the contemnor") (citations and internal quotation marks omitted).

█ Where a party to civil litigation resists compliance with an order to produce on the ground that a privilege protects against required disclosure, appellate jurisdiction in advance of a final judgment has been rejected in part because of the contemnor's option of complying, then liti-

gating the rejected claim of privilege on appeal from any adverse final judgment, and, if successful, obtaining return of the produced items. *See IBM v. United States*, 493 F.2d 112, 119 (2d Cir.1973) (noting opportunity to litigate claim of attorney-client privilege after disclosure in rejecting appeal before final judgment).[3] However, a contemnor who is unable to comply because of lack of possession (or control) of the requested items has no comparable opportunity to effect compliance and later litigate an asserted legal defense to production.[4]

■ Language in the Supreme Court's opinion in *Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929), suggests that appellate rights of a civil contemnor claiming inability to comply might be greater than those of a civil contemnor asserting a privilege against compliance. With respect to a bankrupt held in civil contempt for failure to comply with a turnover order, the Court noted the risk of "error and hardship" if a bankruptcy or trial court erred in rejecting a claim of inability to comply, but responded that "the conscience of judges in weighing the evidence under a clear perception of the consequences, *together with the opportunity of appeal and review*, if properly taken,

will restrain the courts from recklessness of bankrupt's rights on the one hand and prevent the bankrupt from flouting the law on the other."[5] *Id.* at 364, 49 S.Ct. 173 (emphasis added). The Court's reliance in *Oriel* on the safeguard of an appeal does not necessarily mean that appellate jurisdiction is available to review, in advance of a final judgment, an order of continued confinement for a party claiming inability to comply, because finality considerations in bankruptcy are more flexible than in ordinary civil litigation. *See* 1 Collier on Bankruptcy ¶ 5.07[1][b], at 5–21 (Lawrence P. King et al. eds., 15th ed. rev. 2001); *see also In re American Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir.2001) (noting the "flexible standard of finality" applicable in bankruptcy proceedings); *In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir.1995) (noting that for purposes of appeal, the concept of "finality" is more flexible in the bankruptcy context than in ordinary civil litigation). Nevertheless, the Court's emphasis on the importance of appellate rights makes us hesitate to refuse jurisdiction in a case where a civil contemnor's claim of inability to comply has been rejected.

■ Similar to the need for some review to determine whether, because of the pas-

---

3. Our *IBM* decision did not reckon with the possibility that the party producing the allegedly privileged material might prevail on the merits and thus encounter a substantial obstacle to an appeal to vindicate its claim of privilege.

4. It is arguable that a contemnor claiming improper rejection of an assertion of inability to comply could accept entry of a default judgment in the underlying action and challenge the rejection of the claim of inability on appeal from such a judgment. Of course, that procedure is far riskier than the option outlined in *IBM* of producing and then litigating the privilege claim on appeal from an adverse final judgment; if the claim of privilege is rejected on appeal from a final judgment, the

produced documents remain unreturned, but if the claim of improper rejection of an assertion of inability to comply is rejected on appeal from a default judgment, it is likely that the default judgment would remain. We leave consideration of such matters to the panel to which this appeal will be assigned.

5. The Court quoted this language two decades later in *Maggio v. Zeitz*, 333 U.S. 56, 76–77, 68 S.Ct. 401, 92 L.Ed. 476 (1948). *Maggio* is arguably distinguishable from *Oriel* with respect to appealability because in *Maggio* the contemnor was an officer of the bankrupt corporation, whereas in *Oriel*, the contemnor was the bankrupt, *i.e.*, a party in the underlying litigation.

sage of time, a normally unappealable civil contempt has been properly determined to remain classified as civil, some review appears to be warranted as to whether a rejection of a contemnor's claim of inability to comply has been properly made. Without such review, a contemnor whose claim of inability to comply has been improperly rejected, even under the deferential standards of *Huber,* would remain confined indefinitely.

Since the issues explored in this opinion have not been briefed by the parties and since the arguments for at least some limited exercise of appellate jurisdiction in advance of a final judgment appear to be substantial, we will deny the motion to dismiss the appeal, without prejudice to renewal before the panel to which the appeal will be assigned. We will also expedite the appeal.

Motion denied, without prejudice; appeal expedited.