284 F.3d 404
 COMMODITY FUTURES TRADING COMMISSION & Securities and Exchange Commission, Plaintiffs-Appellees-Respondents, and
Alan M. Cohen, Receiver-Appellee-Respondent,
v.
Martin A. ARMSTRONG, Defendant-Appellant-Petitioner, and
Princeton Global Management Ltd. & Princeton Economics International Ltd., Defendants.
 Docket No. 01-6159(L).
 Docket No. 01-6160(CON).
 Docket No. 01-3073(CON).
 United States Court of Appeals, Second Circuit.
 Argued January 7, 2002.
 Decided March 18, 2002.
 
 Bernard V. Kleinman, White Plains, NY, for Appellant.
 Martin Glenn, O'Melveny & Myers LLP, New York, NY, for Appellee Alan M. Cohen (Jacob H. Stillman, Solicitor, Leslie E. Smith, Senior Litigation Counsel, Securities and Exchange Commission, Washington, D.C., Kirk Manhardt, Deputy General Counsel, Nancy R. Page, Assistant General Counsel, Commodity Futures Trading Commission, Washington, D.C., on the brief).
 Before JACOBS, F.I. PARKER, SOTOMAYOR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Martin Armstrong appeals from an order of the United States District Court for the Southern District of New York (Owen, J.) extending his confinement for civil contempt of court. We dismiss Armstrong's appeal for lack of appellate jurisdiction.
 
 
 2
 * Armstrong has been incarcerated in the Metropolitan Correctional Center in New York City since January 14, 2000, after the district court entered an order finding Armstrong in contempt of court for failing to turn over approximately $14.9 million worth of corporate assets to the court-appointed temporary receiver for Princeton Economics International Ltd. and Princeton Global Management Ltd.
 
 
 3
 Armstrong appealed the January 14, 2000 order. Prior to hearing his appeal, we asked the district court to clarify which items Armstrong was required to produce, which it did in an order dated August 25, 2000. By summary order dated March 27, 2001, we determined that we lacked jurisdiction over the appeal because the January 14 order was an interlocutory order for civil contempt of court. SEC v. Princeton Econ. Int'l Ltd., Nos. 00-6076(L), 00-6156(CON), 2001 WL 300550, 7 Fed.Appx. 65 (2d Cir. Mar. 27, 2001) (unpublished order) (hereinafter "March 27, 2001 Summary Order").
 
 
 4
 The present appeal arises from the district court's order on July 6, 2001, extending the contempt order (which had been scheduled to expire on July 14, 2001) and Armstrong's incarceration. The district court issued the order after a hearing in which it found that Armstrong produced no evidence that he had either attempted or was unable to comply with the contempt order. The district court subsequently explained its decision in an opinion dated July 17, 2001. SEC v. Princeton Econ. Int'l Ltd., 152 F.Supp.2d 456 (S.D.N.Y. 2001). Specifically, the court found that Armstrong's confinement "still serves coercive purposes" in that "it might yet yield its intended result." Id. at 458. The court further found that in light of our then-recent March 27, 2001 dismissal of Armstrong's appeal, and of the failure of Armstrong's other efforts at extraordinary relief, it was likely that Armstrong was "just now starting to feel some effects of his continued confinement" and the "requisite degree of coercion." Id. at 463.
 
 II
 
 5
 The issue raised on appeal has been discussed at length in earlier rulings, familiarity with which is presumed. See, e.g., March 27, 2001 Summary Order; see also CFTC v. Armstrong, 269 F.3d 109 (2d Cir.2001) (denying, without prejudice, appellees' motion to dismiss this appeal for lack of jurisdiction).
 
 
 6
 In summary, just as we lacked jurisdiction over Armstrong's first appeal, we lack jurisdiction over this appeal unless we find that his confinement has become punitive rather than coercive, thus effectively converting the district court's order into a final, appealable order for criminal contempt. See, e.g., Pro-Choice Network of W. N.Y. v. Walker, 994 F.2d 989, 994 (2d Cir.1993); Simkin v. United States, 715 F.2d 34, 36-37 (2d Cir.1983). As we previously stated, "[i]n distinguishing criminal and civil contempt sanctions, we inquire whether the sanction's purpose was to coerce compliance and whether the contemnor was given the opportunity to cure his contempt and thereby end the sanction." March 27, 2001 Summary Order, 2001 WL 300550, at *1 (citing Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir.1989)).
 
 
 7
 As there is no question that Armstrong has been given the opportunity to cure his contempt, the issue before us is whether Armstrong's confinement continues to have a coercive, rather than punitive, purpose. The district court found that it does, and our review of that finding is deferential:
 
 
 8
 A district judge's determination whether a civil contempt sanction has lost any realistic possibility of having a coercive effect is inevitably far more speculative than his resolution of traditional factual issues. Since a prediction is involved and since that prediction concerns such uncertain matters as the likely effect of continued confinement upon a particular individual, we think a district judge has virtually unreviewable discretion both as to the procedure he will use to reach his conclusion, and as to the merits of his conclusion.
 
 
 9
 Simkin, 715 F.2d at 38 (footnote omitted).
 
 
 10
 Armstrong had the burden of producing evidence to show that he cannot comply with the order. The district court observed that Armstrong has come forward with none. On appeal, Armstrong does not challenge that finding (or cite any new evidence). Rather, he argues that the length of his confinement (now more than two years), combined with his repeated declarations that he will not comply with the contempt order, compel the conclusion that, in fact, he will never comply, and thus that the order has lost its coercive effect. He also argues that in light of his extended incarceration and the fact that law enforcement authorities have searched his home and offices and found none of the subject assets, the district court could not reasonably have found that the assets remain in Armstrong's possession or control.
 
 
 11
 Both arguments are meritless. True, Armstrong has been confined for more than two years, but the length of his confinement must be viewed in the light of the value of the concealed property, which is unusually great. Furthermore, we agree with the district court that the coercive effect of Armstrong's incarceration has likely been attenuated somewhat by the pendency of his various appeals and petitions for extraordinary relief. Significantly, while the coercive effect of the initial contempt order decreased as the expiration date drew near, the July 6, 2001 order contains no expiration date. With the dismissal of the instant appeal, Armstrong will for the first time be faced with the prospect of indefinite confinement.
 
 
 12
 As to Armstrong's second argument, it is not to be expected that Armstrong would have hidden the assets in his home or office.
 
 
 13
 There is surely a limit to how long someone will choose to stay in jail, even for $14.9 million, but we see no basis for rejecting the district court's finding that Armstrong's incarceration continues to serve a coercive purpose. The contempt therefore remains civil in nature and we lack jurisdiction over his appeal. The district court fully recognizes that Armstrong's civil confinement "cannot last forever." SEC v. Princeton Econ. Int'l Ltd., 152 F.Supp.2d at 463. A great prolongation of Armstrong's incarceration will require a careful reassessment of its coercive potential. For now, we leave this to the sound discretion of the district court.
 
 
 14
 * * *
 
 
 15
 For the reasons set forth above, the appeal is hereby DISMISSED for want of jurisdiction.