10-4967-cv
Close-Up v. Berov

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of April, two thousand twelve.

PRESENT:
>           PIERRE N. LEVAL,
>           ROBERT D. SACK,
>           PETER W. HALL,
>                     *Circuit Judges.*

------------------------------------------------------------

CLOSE-UP INTERNATIONAL, INC., KINOVIDEOOBYEDINENIE
KRUPNY PLAN, AND FEDERAL STATE UNITARY KINOKONTSERN
MOSFILM,
>                     *Plaintiffs -Appellees*,

>           v.                                        No. 10-4967-cv

JOSEPH BEROV,
>                     *Defendant-Counter Claimant – Appellant*,

NATASHA ORLOVA, RIGMA AMERICA CORPORATION, RUSSIAN
 ENTERTAINMENT AND WHOLESALE, INC., AKA ST. PETERSBURG
PUBLISHING HOUSE AND GROUP,
>                     *Defendants-Counter Claimants,*

SAINT PETERSBURG PUBLISHING HOUSE AND GROUP,
RUSSIAN DISTRIBUTORS, INC., 3052 WEST 21ST STREET LLC,
>                     *Defendants.*

------------------------------------------------------------

FOR DEFENDANT-APPELLANT:    BERNARD V. KLEINMAN, Law Office of Bernard
                            Kleinman, PLLC, White Plains, New York.

FOR PLAINTIFFS-APPELLEES:    ALEC SAUCHIK, ESQ., Sauchick Law Group, P.C.,
                            Brooklyn, New York.

Appeal from the January 31, 2011 order of the United States District Court for the Eastern District of New York (Cogan, *J*).  **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

This case arises from civil litigation for copyright and trademark infringement against Joseph Berov and other defendants.   In June 2010, this Court affirmed a nearly three million dollar judgment against Berov.   *Close-Up Int'l, Inc. v. Berov*, 382 F. App'x 113 (2d Cir. June 29, 2010) (unpublished).   In November 2010, based on allegations that Berov had been transferring assets outside of the United States to avoid paying the judgment and following a previous finding of contempt made two years earlier, the district court (Trager, *J.*) entered an order finding Berov in contempt of court and ordering his arrest and detention.   Berov appealed the contempt order to this Court and sought bail pending appeal.   On January 10, 2011, a panel of this court remanded the matter to the district court[1] to clarify the factual basis of the contempt finding and the purgation conditions that would secure Berov's release.   *Close-up Int. Inc. v. Berov,* 10-4967-cv, 2010 WL 5558296, at *5 (2d Cir. Jan. 10, 2011).   The district court was also to consider, in the first instance, whether Berov should be released on bail pending appeal.

On remand, the district court, after an evidentiary hearing, determined that Berov had, in violation of the district court's April 25, 2007 order, mortgaged two properties in New York for a

_____

[1] In light of Judge Trager's passing, on remand the matter was assigned to Judge Cogan.

2

total of $787,226 and had failed to disgorge the proceeds of those mortgages as required by the district court's June 11, 2008 order. Berov had also sold an apartment in Moscow for $1,450,000 without giving notice to the plaintiffs in violation of the April 25, 2007 order, and transferred the sum of $1,200,000 from a JPMorgan Funds account belonging to him in violation of the June 11, 2008 order. The district court ordered that Berov could purge the finding of contempt by bringing into court funds necessary to cover the amounts associated with the mortgages, sale and transfer not to exceed the amount of the judgment in the underlying action.[2]

Berov now appeals the district court's January 31, 2011 order of contempt.[3] He argues (1) that the district court lacks the inherent authority to hold him in contempt and order his incarceration; (2) the evidence at the hearing failed to establish that he was in fact in contempt; (3) he was denied due process when the district court permitted only one of his attorney's to argue an issue; (4) the district court erred in denying bail pending appeal; and (5) continued incarceration is solely punitive and has lost its coercive effect. We assume the parties familiarity with the factual background, procedural history and issues on appeal; we elaborate only as necessary to explain our decision to affirm the district court.

---

[2] Since this appeal was filed, the district court has, after a hearing, modified its January 31, 2011 order. In its August 17, 2011 Memorandum Decision and Order, the district court concluded that the JP Morgan transfer had occurred prior to the district court's order enjoining Berov from transferring assets. Accordingly, the amount required to purge Berov's contempt was reduced from $2,577,004.86 to $2,237,226. *Close-Up Int'l, Inc., v. Berov*, 02 Civ 2363 (BMC) (August 17, 2011) (Memorandum Decision and Order).

[3] Berov has also sought review in this appeal of subsequent orders entered by the district court. As noted below, we decline to undertake that review.

3

**I.      Finding of Contempt and Order of Incarceration**

We have jurisdiction over Berov's appeal "because where, as in this case, 'civil contempt proceedings are instituted after the conclusion of the principal action rather than during the pendency of the action, the order disposing of the contempt proceedings is appealable' as a final decision of a district court under 28 U.S.C. § 1291." *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 163 (2d Cir. 2009) (quoting *United States v. O'Rourke*, 943 F.2d 180, 186 (2d Cir.1991)).   Berov challenges several aspects of the district court's contempt finding and its order of continued incarceration.   First, he argues that the evidence produced during the January 2011 hearing failed to establish that he had violated the April 2007 and June 2008 orders. He next claims that the district court, in holding him in contempt and ordering his incarceration, exceeded its inherent authority.   Lastly, he maintains that his continued incarceration has, at this juncture, evolved from a coercive measure into a punitive measure.   For the reasons that follow, each of these contentions is without merit.

A.      Plaintiffs Demonstrated that Berov Violated the District Court's Orders

"[W]e review the district court's legal determinations de novo and its factual determinations for clear error . . . [and] our review of a contempt order for abuse of discretion is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted." *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1171 (2d Cir.1996) (internal quotation marks omitted).   "A court may hold a party in civil contempt only if there is a clear and unambiguous order, noncompliance is proved clearly and convincingly, and the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Drywall*

4

*Tapers and Pointers of Greater New York v. Local 530*, 889 F.2d 389, 394 (2d Cir. 1989) (internal quotation marks omitted).

Berov argues that the district court's prior orders were not clear and unambiguous; that his noncompliance was not proven clearly and convincingly; and that he had made diligent efforts to comply. In reviewing factual findings for clear error, we do not "second-guess either the trial court's credibility assessments or its choice between permissible competing inferences." *Ceraso v. Motiva Enters.*, 326 F.3d 303, 316 (2d Cir. 2003); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) ("It is within the province of the district court as the trier of fact to decide whose testimony should be credited.").

Berov asserts that he does not readily understand English, and that it was not clear that the district court's April 25, 2007 order prevented him from mortgaging the Riverhead, New York properties. That order directed that (1) Plaintiffs were allowed to file liens on two pieces of real property owned by Berov in Brooklyn; (2) Berov was obligated to provide a schedule of all of his real property assets to Plaintiffs; (3) Berov was ordered not to sell his real property for anything less than fair market value or to place any other mortgages or encumbrances on his properties; and (4) Berov was ordered to deposit with the Eastern District of New York all proceeds from any sale of his real estate. In a September 5, 2007 email, Berov identified nine properties: three in Brooklyn, New York; two in Riverhead, New York; one in Marion, New York; one in Monroe County, Florida; an apartment in Moscow; and five lots in the Dominican Republic. The June 11, 2008 order required that Berov (1) be restrained from transferring any assets, real property or personal property; (2) transfer to Plaintiffs his stock certificates for Florida properties and all documents of ownership of real property in the United States and abroad; (3) appear for deposition

5

and produce all documents requested by Plaintiffs; and (4) disgorge the mortgage proceeds he received in contempt of the court's prior order. The requirements and limitations set forth in the April and June orders are plain on their faces, and even if we credited Berov's claim that the April order did not clearly identify the two Riverhead, New York properties, Berov testified that he understood, under the district court's June 2008 order, he was required to disgorge the proceeds of the mortgages placed on the two Riverhead, New York properties. Furthermore, Berov's own testimony that he understood he needed to but did not comply with the district court's June 2008 order dispels the notion that a lack of understanding of the English language somehow led to inadvertent non-compliance with the district court's orders.

With respect to whether the plaintiff proved Berov's non-compliance clearly and convincingly, the following evidence was presented at the contempt hearing: documents purporting to give power of attorney to a woman identified as Berov's fiancé, Natasha Orlova; a deed to the Moscow apartment signed by Orlova after the issuance of the April 2007 order; Berov's testimony that he could sell certain Russian and Georgian properties for $5-10 million (and thus satisfy the June 2008 requirement to disgorge the amount of the mortgages); and Berov's testimony that he understood the June 2008 order to require him to surrender an amount up to the value of the two mortgages. From this evidence the district court concluded that Berov's testimony that he did not understand the scope of the April 2007 order was not credible, and that plaintiffs had met their burden of demonstrating that Berov had violated the April 2007 and June 2008 orders by selling the Moscow apartment, and taking out the mortgages. An independent review of the record reveals no clear error in the district court's factual findings, and we conclude

6

that those findings support the district court's conclusion that Berov's non-compliance was clearly and convincingly proved by the plaintiffs.[4]

Finally, Berov maintains that his prior payment of $250,000 to the plaintiffs demonstrates a good faith effort to satisfy the judgment. To be clear, Berov did not make a payment of $250,000; rather he and the plaintiffs agreed pursuant to the terms of a settlement agreement that the judgment owed would be reduced by $250,000. Furthermore, Berov testified that he has property worth, at the very least, more than $5 million that he could have sold to satisfy the court's June 2008 order to disgorge the mortgage proceeds. There was no evidence, however, that Berov attempted in any way to carry out the sale and bring those funds into the court. Thus the district court did not err in concluding that Berov had not diligently attempted to comply with the district court's orders.

### B. District Court Did Not Exceed Its Authority in Holding Berov in Contempt or in Ordering His Incarceration

Berov challenges the district court's authority to order his detention as a means of coercing compliance with its orders. He argues, *inter alia*, that the Non-Detention Act, codified at 18 U.S.C. § 4001(a), limits the scope of the district court's contempt powers. His arguments are not persuasive.

It is a widely-held and long standing principle that detention as a means of coercing compliance with the court's order was an option well within the district court's inherent authority. *See Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994); *see also Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006). Here, Berov violated a lawful court order not

---

[4] As noted *supra*, note 2, the district court subsequently found that Berov's transfer of $1.2 million from his JPMorgan account was not contumacious.

7

to encumber certain property; he then violated the court's lawful order to disgorge the value of mortgages obtained in violation of the first order. In addition, Berov sold property and transferred assets in clear violation of those orders. With respect to this conduct the district court stated, "I am imposing contempt in order to get him to do what he was supposed to do . . . ." It is well understood that, when a party is found in civil contempt, the sanction ordered must be issued to "coerce [] the defendant into compliance with the court's order . . ." *Bagwell*, 512 U.S. at 829.

The record makes clear that the district court's contempt ruling is aimed at compelling Berov to comply with the district court's prior orders and that once compliance is demonstrated, Berov will be released. We find no error in the district court's oral and written rulings on the matter which reflect an understanding of the law and of the limits and proper uses of coercive detention.

C.      Berov Fails to Demonstrate that His Continued Incarceration is
        Punitive

Berov next argues that his continued detention has lost its coercive effect and is now punitive. He claims he lacks the ability to purge his contempt, and he therefore should be immediately released. A contemnor can secure his freedom, without complying, if he demonstrates that there is "no wilful disobedience but only an incapacity to comply," *Maggio v. Zeitz*, 333 U.S. 56, 73 (1948). The burden of proving that he cannot purge the contempt order lies with Berov. *Simkin v. United States,* 715 F.2d 34, 37 (2d Cir. 1983); *see also*, *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 658 (2d Cir. 2004); *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("The

8

alleged contemnor bears the burden of producing evidence of his inability to comply" with the court order).

Here, there is ample evidence that Berov is capable of purging the contempt order. During the contempt hearing, Berov testified that he owns a valuable parcel of land in a resort area in Abkhazia (a self-proclaimed independent country, recognized by the United States as part of Georgia). Jan. 24, 2011 Tr., at 27. Berov testified that this land "could be sold from [sic] $5 to $10 million depending on how fast the sale needs to be done. If it's fast it would be less, if I will take time, probably it will go over the $10 million." Jan. 25, 2011 Tr., at 67-68. Berov further testified that he owns land in the Dominican Republic totaling 30,000 square meters (approximately 7.4 acres). Jan. 24, 2011 Tr., at 77-78. In addition to his owning assets that could be used to purge his contempt, more recent developments indicate that coercive detention is indeed working to induce Berov's compliance and more pointedly that Berov has an ability to comply with the district court's order.

We note that Berov has sought permission to supplement the record in support of his contention that continued detention is punitive. We decline to consider Berov's supplemental filings as part of this appeal and thus decline to review orders entered by the district court subsequent to January 31, 2011 when the order of contempt that is the subject of this appeal was entered. We observe that the district court has periodically reexamined Berov's detention. We leave for the district court to determine in the first instance whether continued detention has lost its coercive effect, *Simkin*, 715 F.2d at 38; *see also Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31(2d. Cir. 1981) ("Ordinarily, it is for the district judge to determine when and if the borderline between

9

coercion and punishment has been reached."); *see also In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 427 (3d Cir. 1979), and such other related arguments as the parties may present.

## II.    Bail Pending Appeal

Because we affirm the district court's contempt order, we need not reach Berov's claim concerning bail pending appeal.

## III.    Limits on Participation of Counsel

Berov also asserts that the district court's decision that only one of Berov's two attorneys could act as the spokesperson deprived him of his right to due process of law by failing to permit him the full use of both of his retained attorneys during the contempt hearing.   This claim is without merit.   Berov has a fundamental right to counsel during civil contempt proceedings, *In re DiBella*, 518 F.2d 955, 959 (2d Cir. 1975), and the record demonstrates that Berov was represented by Adam Richards, Esq., an attorney of Berov's choosing, at every stage of the procedure.   He was also represented by Bernard Kleinman, as additional counsel, before, during and after the contempt proceeding.   To the extent that Berov suggests that Attorney Richards was not the best of his team to present the defense and that Berov was improperly compelled by the district court to rely solely on Attorney Richards' presentation, this does not automatically translate into a meritorious ineffective assistance of counsel claim under the Sixth Amendment.   *Hurel Guerrero v. U.S.*, 186 F.3d 275, 281 (2d Cir. 1999).   This is especially so under circumstances in which Attorney Kleinman stated to the district court that Attorney Richards was best equipped to handle questions about Berov's defense.

10

**IV.    Conclusion**

We have considered all of Berov's remaining arguments and conclude they are without

merit.   For the foregoing reasons, the order of the district court is AFFIRMED.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11